## SOUTHERN PAC. CO. v. ARNETT.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1903.)

### No. 1,812.

1. CARRIERS—DELAY AND CONFINEMENT OF STOCK—DEMAND BY SHIPPER OF STOPPAGE AND RELEASE NOT INDISPENSABLE.

The failure of a shipper to notify or demand of a railroad company that it shall stop a train of stock so that he can water, feed, and rest the cattle before they have been confined on the cars more than 28 hours (Act March 3, 1873, 17 Stat. 584, c. 252 [U. S. Comp. St. 1901, p. 2995, § 4386]), is not necessarily fatal in all cases to his right to recover for damages caused by the negligent delay and confinement of the cattle, if he has in no way requested or consented to the delay or to the continued confinement of the stock.

2. ERROR—BURDEN ON PLAINTIFF IN ERROR TO ESTABLISH BY RECORD.

The presumption in an appellate court is that the charge of the court below was correct and was applicable to the facts presented by the evidence, and, in the absence of proof to the contrary by the record, this presumption will prevail.

3. CARRIERS—DELAYS INCIDENT TO ORDINARY TRANSPORTATION.

Delays incident to ordinary transportation are the same as reasonable delays—as delays consistent with ordinary care.

4. INTEREST—ALLOWANCE ON DAMAGES FOR TORT FOR JURY.

The question whether or not interest shall be allowed on damages for a tort is a question for the jury and not for the court.

5. TRIAL—ERROR IN CHARGE WAIVED.

The error in an instruction which directs the jury to allow interest on damages for a tort is waived unless a specific exception, which calls it to the attention of the court, is taken before the jury retires. A general exception to the measure of damages is insufficient.

---

¶ 4. See Damages, vol. 15, Cent. Dig. § 144.

6. INTEREST ON DAMAGES FOR BREACH OF CONTRACT.
   Interest upon damages for a breach of a contract is generally recoverable as a matter of law. It is not error for a court to instruct the jury to allow interest from the time of demand upon damages allowed for the breach of a contract to transport stock with reasonable care.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Utah.

Henry G. Herbel (Martin L. Clardy, on the brief), for plaintiff in error.

S. D. Catherwood (R. E. Shepherd, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and HOOK, District Judge.

SANBORN, Circuit Judge. This writ of error challenges a judgment against the Southern Pacific Company for its alleged negligence in the transportation of cattle. The stock was carried by it from Caliente, in the state of California, by way of Sacramento and Reno, to Ogden, in the state of Utah, under a written contract with the shipper which provided that it was to be transported "under certain rates, rules and conditions as expressed in general freight department circular, No. G. F. D. 3 (No. G. F. O. 341 revised) amendments thereto, or superseding issues thereof," that the shipper "assumes all risk of loss or damage of, or to stock * * * by reason of delay incident to ordinary transportation," and that the shipper will "load at place of shipment, unload and reload at resting places, and unload at destination and feed and water at his expense and attend the stock en route." The plaintiff below, A. H. Arnett, alleged that the cattle, which were owned by a copartnership of which he is the surviving member, were injured by the unnecessary delay of the train which bore them, and by the confinement of the cattle in the cars without feed, water, or rest for more than 28 hours between Caliente and Reno, and by their delay and confinement for more than 28 hours between Reno and Ogden, in violation of the act of March 3, 1873, 17 Stat. 584, c. 252 [U. S. Comp. St. 1901, p. 2995, § 4386]. The company denied the negligence, and alleged that any injuries which the cattle sustained during the transportation were caused by their weak and unfit condition when they were shipped, by the failure of the men in charge of the stock for the shipper, during their transportation, to unload, feed, and water them at Sacramento and at other stopping places along the route where they could have been unloaded and fed, and by the consent and direction of these men to the company to carry the cattle through from Caliente to Ogden with but a single stop for rest, food, and water.

The case was tried to a jury, and the first specification of error is that the court refused to direct the jury to return a verdict in favor of the defendant. But the evidence is conclusive that the cattle were kept confined in the cars for more than 28 hours without food or water, and that they were thereby injured, and, while there is testimony to the effect that the agents of the shipper consented to this

confinement or requested the continuous transportation, this evidence is contradicted, and there is testimony to the effect that it was the effect of the poor management and the unnecessary delay of the train by the defendant.

It is said that the peremptory instruction should have been given because the delay in the transportation and the long confinement of the cattle were in accordance with the rules and regulations of the company governing the carriage of live stock subject to which the cattle were shipped by the terms of the written agreement. But the record fails to sustain this position. The contract provided that these rules were "the rules and regulations governing the transportation of live stock as per circular No. G. F. D. 3 (No. G. F. O. 341, revised) amendments thereto and superseding issues thereof," and none of these circulars, amendments, or superseding issues, and no evidence of their contents, appear to have been introduced in evidence, so that the court below had no criterion, and this court has none, by which to determine whether or not the train was operated in accordance with the rules agreed upon by the parties. In this imperfect state of the evidence we cannot presume that the delay and the confinement were in accordance with the rules designated in the contract. In actions at law this is a court for the correction of the errors of the court below only. The burden is on the plaintiff in error to establish the existence of those errors, and in the absence of proof by the record that a question of law arose, and that it was presented to and ruled upon by the court below, no error is established, because none could arise concerning a question which was not presented, considered, or decided by the trial court. Chicago G. W. Ry. Co. v. Price, 38 C. C. A. 239, 250, 97 Fed. 423, 434; U. S. v. Patrick, 20 C. C. A. 11, 17, 73 Fed. 800, 806; Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 52 C. C. A. 95, 105, 114 Fed. 133, 143; McCarty v. U. S., 101 Fed. 113, 41 C. C. A. 242; Myers v. Brown, 102 Fed. 250, 42 C. C. A. 320; South Penn Oil Co. v. Latshaw, 111 Fed. 598, 599, 49 C. C. A. 478, 479; Jones v. Buckell, 104 U. S. 554, 26 L. Ed. 841.

Another argument in support of this specification is that the delay in the operation of the train was "incident to ordinary transportation," and hence that the company was exempt from liability for it by the express terms of the contract. But there was substantial testimony, sufficient in our opinion to sustain a finding by a jury to that effect, that a part at least of the delay which may have resulted in the injury to the cattle, and a portion of the long confinement of the stock in the cars, was not incident to ordinary transportation, and was not a customary attribute of it. A thoughtful review of all the evidence in the record, in the light of the contract between these parties, compels the conclusion that the court below committed no error when it refused to instruct the jury to return a verdict for the defendant.

Another criticism of the action of the court at the close of the trial is that it refused to instruct the jury:

"The court charges that it will be your duty, in the examination and consideration of this case, to test the negligence, if any, of the plaintiffs or de-

fendant, as the case may be, in the light of the definition of the word 'negligence' now given you by the court: 'Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or the doing of what such a person under existing circumstances would not have done. The essence of the failure may lie in omission or commission,' " and that it charged them that "negligence is a failure to exercise ordinary care; a failure to exercise that care that an ordinarily prudent man would exercise in his own business where the loss resulting from the want of such care would fall on him."

The complaint is that these rulings were erroneous because the true definition of negligence is the failure to exercise such care as an ordinarily prudent person would exercise under similar circumstances, and that the charge of the court that it was the failure to exercise such care as one would ordinarily exercise in his own business, where the loss resulting from the want of such care would fall upon him, cast too heavy a burden upon the defendant. But under the facts and circumstances of this case there was no difference between the two definitions, and there could have been no prejudicial error in the use of the one instead of the other. An ordinarily prudent person under circumstances similar to those detailed in this evidence would have been the owner and operator of a railroad engaged in his own business of carrying cattle along its line, and any loss resulting from the want of ordinary care on his part would have fallen upon him.

It is specified as error that the court refused to charge the jury:

"If you believe from the evidence that all the delays complained of in this case, or which occurred, were delays incident to ordinary transportation, and were such as reasonable care and caution on the part of the defendant in such transportation justified, you will find for the defendant," and that it instructed them upon this subject that "under this contract it was the duty of the defendant to transport the cattle with ordinary care, and to deliver them at Ogden without unreasonable delay. It is for you to say what was a reasonable and what an unreasonable delay. * * * If such delays as were made were consistent with the exercise of ordinary care on the part of the defendant, they would be reasonable."

The contract exempted the defendant from delays incident to ordinary transportation. The charge of the court exempted it from reasonable delays and from delays consistent with ordinary care, and charged it with liability for all others. There could have been no error here, unless delays incident to ordinary transportation are unreasonable and inconsistent with ordinary care. That position is clearly untenable.

Counsel for the defendant complain that the court refused their request to inform the jury that it was the duty of the shippers to attend to the stock en route, to feed and water it at necessary resting places, to notify defendant and to demand of it to stop at such resting places as they deemed necessary, and that if they were negligent in selecting such resting places and in providing food and water, or if they failed to notify defendant and to demand of it to stop at necessary resting places, and the alleged damages were caused by this failure, they could not recover. But in its general charge the court gave to the jury the substance of this instruction, with the single exception that it did not inform them that the failure

of the shippers to notify the defendant and to demand of it that it should stop at necessary resting places was fatal to the plaintiff's cause of action. It instructed them that it was the duty of the shippers to furnish food and water to the stock at proper times and places, and to this end to avail themselves of such reasonable opportunities as were afforded along the line of the railroad to unload the cattle for feed and rest; that if they failed in the discharge of this duty, and that failure contributed to the injury of the cattle, they could not complain of any want of care in this regard on the part of the defendant; and that they could not complain of any failure to stop the cattle for the purpose of unloading to feed and water or to rest them to which the agents of the shippers in charge of the stock consented. It is not contended that this charge, in so far as it was given, was erroneous, but that the court erred because it did not go farther and direct the jury that the shippers could not recover in this action unless their agent demanded of the defendant that it should stop the train of cattle at necessary resting places. Cases may arise, they may be conceived, where a failure of the agent of the shipper to make such a demand would be fatal to his claim for damages, as where, for reasons apparent to the agent, it was necessary to rest and feed the stock when they had been confined in the cars much less than the 28 hours specified by the act of Congress. But the damages sought in this case resulted from delay so great that the confinement in the cars en route was more than the period limited by the act of Congress. That act charges upon the railroad company transporting stock the primary duty of preventing their confinement in cars for a longer period than 28 consecutive hours without unloading them for rest, water, and feed. It was therefore the duty of the defendant in the first instance to furnish a place and reasonable facilities to enable the shippers to unload, feed, and water the cattle before they had been confined more than 28 consecutive hours in the cars in which it was transporting them along its railroad. Congress imposed this duty upon the defendant regardless of the request or notice of the shipper. No sound reason occurs to us why the shipper can be deprived of his right to recover for damages which resulted from the failure of the defendant to discharge the plain duty imposed upon it by the law because the owner or shipper of the cattle did not make a demand upon the defendant that it should yield obedience to the law. The failure of a shipper to notify or to demand of a railroad company that it shall stop a train of stock so that he can water, feed, and rest the cattle before they have been confined more than 28 hours is not necessarily fatal in all cases to his right to recover for damages caused by the confinement, if he has in no way requested or consented to the continued confinement and transportation of the stock.

The contract provided that the amount to be claimed for each animal lost or damaged through the negligence of the defendant in its transportation should be adjusted on the basis of the value of the animals at Caliente specified in the contract at the time of their shipment, and this value was $20 for each cow and steer and $5 for each calf. Shortly after the stock arrived at Ogden the plaintiff sold those

which survived the transportation for $9,348. The defendant requested the court to instruct the jury that the plaintiff's damages, if any, were the difference between $9,348 and the value of the cattle at Caliente specified in the contract, plus any expense incurred in bettering their condition after their transportation and before the sale. This was not the true measure of damages, because it deprived the plaintiff of his right to recover the damage he sustained from the injury to each animal hurt by the negligence of the defendant. Thus, if the negligence of the defendant had killed half of the cattle, and the plaintiff had sold the other half for an amount equal to the aggregate value of all the cattle specified in the contract, he would still have been entitled to damages for the half that had been killed. The true measure of the damages was the difference between the value of the cattle at Caliente as they would have been on their arrival at Ogden if they had been transported with ordinary care, and their value at Caliente as they actually were when they arrived at Ogden, not exceeding the value specified in the contract, and interest on this difference from the time compensation for the loss was demanded. This was the measure of damages given to the jury for their guidance, and there was no error in this instruction or in the refusal to give that requested by the defendant.

It is contended that the court below erred in that it instructed the jury to add to the amount of damages which they found interest thereon from November 3, 1898, and the authorities are cited in which it is held that the question whether or not interest upon damages for a tort should be allowed is for the jury and not for the court. Lincoln v. Claflin, 7 Wall. 132, 139, 19 L. Ed. 106; Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co., 52 C. C. A. 95, 102, 105, 114 Fed. 133, 140, 143. But this was an action for the breach of a contract to transport live stock over the railroad of the defendant with reasonable care. Nothing less than the actual amount of the loss and interest thereon from the time it was demanded will fully compensate the shipper for the breach of the agreement, and he is entitled to full compensation. The general rule is that the plaintiff is entitled to interest upon the damages which he sustains from a breach of a contract and this case falls fairly within that rule. There was no error in the charge of the court to the jury to allow interest upon the damages. Missouri, Kansas & Texas Ry. Co. v. Truskett, 104 Fed. 728, 732, 733, 44 C. C. A. 179, 183; New York, etc., Railroad Co. v. Estill, 147 U. S. 591, 622, 13 Sup. Ct. 444, 37 L. Ed. 292.

Moreover, if this suit should be treated as an action for damages for a tort rather than for a breach of a contract, the judgment below cannot be reversed on account of the error in the charge regarding interest. The entire charge of the court concerning the measure of damages and the interest upon the damages to be allowed is contained in a single paragraph, and the only complaint of it before the jury retired was a general exception "as to the measure of damages." No exception was taken to the allowance of interest, nor was the attention of the court in any way called to the question of law relating to it. Counsel for the defendant by their silence waived any objection to the charge upon this ground, and the error in this respect is

not here for our consideration. It was indispensable to the presentation of it to this court that a specific exception should have been taken which clearly pointed out to the trial court the error into which it had fallen, and thus sharply called its attention to the question of law which counsel now seek to present. Lincoln v. Claflin, 7 Wall. 132, 139, 19 L. Ed. 106; Cass County v. Gibson, 107 Fed. 363, 367, 46 C. C. A. 341, 346.

There are many other alleged errors resulting from the refusal of the court to submit to the jury various instructions requested by counsel for the defendant. But a critical comparison of these requests with the general charge of the court discloses the fact that, so far as they were material and correctly stated the law, the substance of them was embodied in that charge. No good purpose would be served by setting them forth at length, and farther discussion of them is pretermitted.

Counsel specify as error the ruling of the court wherein it refused to permit a conductor of a freight train, who had been engaged in that occupation for 17 years, and who saw the cattle loaded at Caliente, to testify to his opinion as an expert in answer to this question, "Were said cattle in a good or an unfit condition for transportation over the road, and why?" while it permitted him to describe to the jury the condition of the cattle which he observed. But there was no error in this ruling, because there was no evidence that this conductor had ever transported cattle upon any of the trains in his charge, that he had ever bought, sold, or handled them, or that he had any better knowledge of the fitness of these cattle for their journey than a juryman might have had after their condition had been clearly described to him by the witnesses.

There are many other specifications of alleged errors in the rulings upon the admission and rejection of evidence, but none which disclose any actual error. For example, a witness who had been engaged in handling, buying, selling, and shipping cattle by rail was asked how long cattle could be confined in cars without feed or water without serious detriment to them, and was permitted to answer that question, over the objection that it was immaterial because it was the duty of the shipper to see that they rested and received water. After a witness had testified to previous trips from California to Ogden over the railroad of the defendant with trains of cattle, and that Low Kern, a place from which he started with one train load, was a little farther from Sacramento and Reno than Caliente was, he was permitted to testify, over the objection that Low Kern was on a branch line, that the time occupied in making his trip from Low Kern to Reno was about 26 hours, for the purpose of a comparison of that trip with the transportation in question. The deposition of one Wright was taken and filed by the defendant. On the trial the plaintiff offered and read in evidence a portion of it. Counsel for the defendant inquired of one of plaintiff's attorneys if he offered the first cross-interrogatory in the deposition, and he replied that he did not, because he thought it was incompetent. Counsel for the defendant did not offer the question or its answer, and yet the record gravely recites that the court sustained

the objection and the defendant excepted, when no offer or objection had been made. Error is predicated of this excerpt from the record:

"Q. Well, who paid the freight on the cattle? Did Comstock, or did you? A. I paid the freight on the cattle. (Objected to by defendant as to who paid the freight on the stock.) The Court: Let the objection be overruled, and the answer will stand."

But no ground or reason for this objection was stated, and the objection was not made until after the question was answered. A witness who had been engaged in shipping stock for 14 years, and who examined the cattle which are the subject of this controversy after they arrived at Ogden, was allowed to testify, over the objection that he was expressing an opinion and more probably a speculation, that he should say from their condition and appearance that they had been badly handled, and perhaps misused, on the cars.

The foregoing are five specifications of alleged errors in rulings upon testimony taken seriatim as they appear in the record, and the remainder are of a similar character. The statement of them is ample refutation of the charges of error based upon them. They present no question worthy of serious consideration or discussion, and the judgment below is affirmed.