GEORGE T. ECTON, Respondent, v. CHICAGO, BUR-LINGTON & QUINCY RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, May 6, 1907.**

1. **COMMON CARRIERS: Cattle Shipment: Delay: Reasonable Time.** An agreement for the transportation of cattle which does not fix a time of delivery must be complete in a reasonable time and the customary time for such shipments will be considered a reasonable time.

2. ———: ———: ———: **Negligence.** Mere proof of delay is not proof of negligence. There must be something additional which characterizes the delay as culpable.

3. ———: ———: ———: ———: **Accident.** A mere delay of three hours in starting from a shipper's station will not fix the liability for negligence, especially where it affirmatively appears that such delay was caused by an unforeseen accident in running over a man; and a carrier like other bailees may excuse delay in delivery by accident or misfortune.

4. ———: ———: ———: **Interstate Law.** Stopping a shipment of cattle to feed them in compliance with the interstate commerce act excuses the carrier's delay in delivery caused thereby; but if negligent delay causes the unloading of the cattle to comply with said law then it would not excuse.

5. ———: ———: ———: ———: **Evidence.** Evidence in the record held sufficient to show the compliance with the interstate act was necessary.

6. ———: ———: ———: **Pleading: Evidence.** Where an action is founded on negligent delay in delivery there can be no recovery on a failure to furnish proper trains with faster schedule; and evidence of the schedule of other trains can have no application.

Appeal from Clay Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

REVERSED.

*Warner, Dean, McLeod, Holden & Timmonds, H. F. Simrall* and *N. O. Borders,* for appellant, filed argument.

*Martin E. Lawson,* for respondent, filed argument.

ELLISON, J.—The plaintiff's action is based on a negligent delay at different points along the line in the shipment of five carloads of cattle from Kearney in the State of Missouri to Chicago in the State of Illinois. The damage alleged is that the cattle did not arrive as early in the day of their arrival as they should for the best market of that day, and by shrinkage in weight. The judgment in the trial court was for the plaintiff.

Since the verdict was for the plaintiff we will treat the case from the standpoint of the evidence in his behalf. It was shown that the time for defendant's train to leave Kearney on its way from Kansas City to Chicago was 9:20 p. m., and that on the night of the shipment plaintiff had his cattle properly loaded for them to be attached to the train at that time, but that there was a delay of about three hours, between Kansas City and Kearney, so that they did not leave the latter place until shortly after midnight. Shortly after leaving Kearney there was a delay of an hour at a place designated in the evidence as Holt's Hill. And that there were other delays in Missouri. After entering Illinois there was a delay at a place called Avon. And at Galesburg (which is several hours run out of Chicago) there was a delay of some minutes more than six hours. Five hours of this was for rest and feed for the cattle and the balance of the time was consumed in unloading and reloading. The cattle arrived at the stockyards in Chicago at 9:56 a. m. of the second morning after shipment; that is to say, counting the transportation as beginning when they were loaded at Kearney at 9:20 p.

m., the time occupied in the shipment was thirty-six hours and thirty-six minutes. Plaintiff had been a shipper of cattle to Chicago on defendant's road for near twenty years and the evidence which he gave in his own behalf showed that he never arrived in Chicago earlier than two o'clock a. m. of the second morning, and that time was only made once many years back. That he generally arrived some later than six o'clock a. m. of the second morning. The trip was therefore never made within twenty-eight hours and customarily was not made in shorter space than thirty, thirty-two or thirty-three hours after time of departure. The period of twenty-eight hours becomes important in disposing of the case and we repeat, that the evidence of plaintiff himself and that given in his behalf, all shows that more than that time was always taken for a shipment of cattle between the two points.

There was a written contract of shipment between plaintiff and defendant which did not contain an agreement to transport the cattle within any given time, nor to any particular day's market. The time to complete the shipment must therefore be a reasonable time and the time customarily made for shippers will be considered a reasonable time so far as such shippers are concerned. [Sloop v. Railroad, 93 Mo. App. 605; Dawson v. Railroad, 79 Mo. 296.]

But we have already seen that, counting from the time the cattle should have started from Kearney to the time they actually arrived at Chicago, more than thirty-six hours was taken and this being substantially more than the customary time, is, considering the face of the statement alone, unreasonable. But this delay, thus causing a prolongation of the time, in order to render defendant liable for results, must have been occasioned by defendant's negligence. Negligence is the ground of plaintiff's complaint, and if it consists in delay the plain-

tiff must prove that such delay was the result of negligence on defendant's part. Mere proof of delay is not proof of negligence. There must be something additional which characterizes the delay as culpable. [McCrary v. Railroad, 109 Mo. App. 569; Anderson v. Railway Co., 93 Mo. App. 677; Wright v. Railroad, 118 Mo. App. 392.] These cases are founded upon decisions of the Supreme Court therein cited.

The delay of three hours in starting from Kearney was not shown by plaintiff to have been attributable to defendant's negligence. There was no attempt made by plaintiff to show the cause. He only showed the fact. But it seems that defendant accounted for not arriving at Kearney from Kansas City by showing that shortly after leaving Harlem, a station just across the river from that city, the engine ran over and killed a man who had suddenly appeared upon the track. When the engineer and fireman discovered that a man had been struck the train was stopped and the body of the man, with some difficulty, was taken from under the cars. This occupied time, and made necessary for the train to take a nearby sidetrack to let a passenger train pass. The engineer then brought his engine out onto the main track and went back to where the body of the man had been left and placed it on the tender of the engine and took it back to Harlem. He then came back to his train and resumed the trip. There was nothing to show that the man's death could be attributed to any negligence on the part of those in charge of the train. The necessary delay in attending and caring for the body of the man was an act of humanity, which should be applauded rather than condemned. The delay thus shown was an unavoidable delay, unforeseen when the cattle were received, and for that the carrier of freight is not liable. [McCrary v. Railroad, supra; McFall v. Railroad, 117 Mo. App. 481.] In this respect the carrier "stands upon the same ground with other bailees, and may ex-

cuse delay in the delivery of goods by accident or misfortune, although not inevitable or produced by the act of God." [Hutchinson on Carriers, secs. 330, 331; Moore on Carriers, 250.]

We will next consider the delay at Galesburg of more than six hours. This delay is justified by defendant under the following sections of the United States statute: "Section 4386. No railroad company within the United States, whose road forms any part of a line of road over which cattle, sheep, swine or other animals are conveyed from one State to another, or the owners or masters of steam, sailing, or other vessels carrying or transporting cattle, sheep, swine or other animals from one State to another, shall confine the same in cars, boats or vessels of any description, for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes. In estimating such confinement the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon contingencies hereinbefore stated.

"Section 4387. Animals so unloaded shall be properly fed and watered during such rest by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad company or owners or masters of boats or vessels transporting the same at the expense of the owner or person in custody thereof; and such company, owners or masters shall in such case have a lien upon such animals for food, care and custody furnished, and shall not be liable for any detention of such animals." It is also provided, in section 4388, that, "When animals are carried in cars, boats or other vessels in which they can and do have proper

food, water, space and opportunity to rest, the provisions in regard to their being unloaded shall not apply."

That statute had not theretofore been enforced and plaintiff had never before been delayed in his shipments on account of the law. But latterly the general government had begun to prosecute for its violation, and in this instance defendant complied with it over the protest of the plaintiff. A delay occasioned by compliance with a statute, applicable to the carrier, is a justifiable delay and no liability can attach therefor against the carrier. In regard to this particular statute the Federal Legislature, out of abundant caution, provided in terms, that the carrier "shall not be liable for any detention of such animals." We regard that clause as having a broader scope than a mere reference to detaining the animals for an enforcement of the lien for feed. It also prohibits damages for detention in course of shipment by reason of the rest and feed required. That the statute was applicable to the defendant carrier in this instance is indisputably shown by the evidence. The contract was for an interstate shipment — was "from one State to another" — and, if not unloaded, the shipment would have been "for a longer period than twenty-eight consecutive hours."

It is doubtless true that if a reasonable time for a shipment does not require twenty-eight hours, and if a longer period than that is made necessary on account of the negligence of the carrier, then the federal statute would not protect him in the damage occasioned by the compulsory loss of time. For in such case the proximate cause of the damage would be the carrier's negligence rather than obedience to the statute. It would be the carrier's negligence which made necessary the application of the statute. But in this case we have seen that a reasonable time did require more than twenty-eight hours for the transportation of the cattle and that in the twenty years' experience of this plaintiff he

had never made the trip in as short a time as that, although not hindered by an enforcement of the statute. So, therefore, we must accept as established that the loss of time caused by a compliance with the statute was not brought about by any negligence of the defendant. For, conceding that there was loss of time at other places than Kearney and Galesburg, which should be attributed to defendant's negligence, yet, when added into one period it would not have reduced the time to a period which could have been made below twenty-eight hours. So, therefore, there are no circumstances or conditions of case by which it can be made to appear that this shipment would not have required more than twenty-eight hours if made in a reasonably expeditious manner. In this we do not consider what might have been possible by special trains run at unusual or unreasonable rates of speed. There is no issue of that kind in the case.

Plaintiff offers the further suggestion in avoidance of the federal statute above set out that that statute (section 4388) was not applicable where the animals in shipment "have proper food, water, space and opportunity to rest," and that defendant did not make it appear that such condition did not exist, and therefore no valid excuse was shown for the delay at Galesburg. Conceding that in such cases the burden rested upon defendant of showing the exception thus made by the statute did not exist, yet we find the record does sufficiently show that it did not. It appears that there were ninety-three head of fat beef cattle weighing about fifteen hundred pounds each which were put into five cars. That would make eighteen head to the car and three more. It is common information that that number of cattle, of that size, could not have "space and opportunity to rest" in any cattle car in use for such shipments. Plaintiff, as already stated, objected to unloading at Galesburg, and gave as one reason that there was hay

in the car.   Nothing was said by him as to the other requirements of the statute and it is fair to assume that they did not exist.   We have no doubt of the record showing ample room for application of the statute.

We have given due consideration to the suggestions made by plaintiff in avoidance of defendant's defense. Among other matters he states that this was the only train upon which he was allowed to ship on that day and that there were others such as meat trains which made faster time.   In considering these suggestions we, in reality, dispose of the greater part of plaintiff's complaint.   Plaintiff has not founded his action upon being refused the fastest trains in defendant's service. He has made his claim on the ground, not of an improper train, but on the negligence of defendant in *delaying* the train "at numerous points for periods of from thirty minutes to four hours at a time on a number of occasions, and so much time was lost by such delays," etc. Plaintiff suggests that by showing that other trains had a faster schedule than the one in controversy and that they made faster time, he showed that this train did not run as fast as it should and that its schedule was not a reasonable time.   These and kindred suggestions cannot be allowed any force in the case, since the petition bottoms the action on specific delays at different points along the line. No other sort of negligence is pleaded and it is a fundamental rule, constantly enforced, that when the charge is specific no other can be urged than that which is specially pleaded.   [Chitty v. Railroad, 148 Mo. 75; Grisamore v. Railroad, 118 Mo. App. 387; Breeden v. Mining Co., 103 Mo. App. 176.]

The record disclosing that plaintiff was without legal ground of complaint, it follows that the demurrer to the evidence offered by counsel for defendant should have been sustained.   The judgment will therefore be reversed.   The other judges concur.