## SMART v. OREGON SHORT LINE R. CO.

No. 3323. Decided July 8, 1919. (183 Pac. 320.)

1. CARRIERS—CARRIAGE OF LIVE STOCK—NEGLIGENCE—DELAY. If at the time of uloading sheep there was an unreasonable delay by the acts of defendant carrier, it was liable if damage resulted from such negligence, when the sheep were unloaded too late in the day and so were chilled; it having been its duty to place the cars in proper position for unloading with reasonable promptness. (Page 609.)

Appeal from First District.

2. CARRIERS—CARRIAGE OF LIVE STOCK—ACTION FOR INJURIES—BUR-
DEN OF PROOF. Sheep shipped over the line of defendant carrier
having arrived at destination in good condition, and having
been in good condition when unloaded, the burden of proof,
on the charge that there was unreasonable delay in putting
the cars in position for unloading, so that the sheep were
unloaded too late in the day and were chilled, was on plaintiff
shipper. (Page 609.)

3. CARRIERS—CARRIAGE OF LIVE STOCK—PROXIMATE CAUSE—BURDEN
OF PROOF. In an action against a carrier for damages to sheep
from delay in placing cars in position for unloading, the
burden was on shipper to prove the carrier's negligence in
delaying the unloading too late in the day, so that the sheep
were chilled, was the proximate cause of their loss. (Page
609.)

4. CARRIERS—CARRIAGE OF LIVE STOCK—NEGLIGENCE—PROXIMATE
CAUSE—EVIDENCE. In an action against a carrier of sheep for
injuries from delay in placing the cars in position for unload-
ing, so that the sheep were chilled, evidence *held* insufficient
to show negligence of the carrier, and to show that any negli-
gence was the proximate cause of the damage. (Page 610.)

Appeal from District Court, First District, Cache County;
*J. D. Call,* Judge.

Action by L. S. Smart against the Oregon Short Line Rail-
road Company, a corporation. From judgment of nonsuit,
plaintiff appeals.

AFFIRMED.

*Walters & Harris* of Logan, for appellant.

*George H. Smith* and *J. V. Lyle,* both of Salt Lake City,
for respondent.

WEBER, J.

On June 1, 1917, plaintiff arranged with defendant to ship
a band of sheep from Pioneer, a station on one of defend-
ant's branch lines in Idaho, to Cavinaugh, a station on the
main line of defendant in that state. The sheep were loaded

in twenty cars at Pioneer the next day, and the shipment of sheep, together with a carload of horses, left at about five p. m., arriving at the place of destination at noon on June 3, 1917, the distance being about 200 miles. At Cavinaugh there were no conveniences for unloading—nothing save a side track long enough to hold four or five cars at a time, and a temporary chute erected by the company. There was no switch engine or crew maintained at the station. Plaintiff had unloaded sheep there before, and knew all the conditions.

Upon arrival of the train at Cavinaugh eight cars· were unloaded without delay by the crew that brought the train. Later a second crew unloaded a car of sheep and the car of horses. The sheep from these cars were then taken to a pasture a quarter of a mile from the station by the plaintiff and seven men whom he had employed to assist in unloading. This took thirty or forty minutes, during which time the engine and crew were idle. Shortly afterwards the second crew left for Montpeliar, and no more unloading was done during the next three hours or until another freight train came along about sundown, when the engine was detached therefrom and the other cars of sheep were "spotted," taken to the chute, and unloaded. It was about 7:30 p. m. when they started to unload these eleven cars, and the work was completed about 9 p. m. All the sheep had arrived at Cavinaugh in good condition. After dark a cold wind arose. Plaintiff testified:

"It was real cold. There were no dead sheep in the cars unloaded at night."

According to plaintiff's testimony, referring to the sheep that were unloaded in the evening:

"Coming off the cars where it was warm they commenced to die as soon as they were taken off; some died on the right of way in fifteen or twenty minutes; some died when they arrived at the pasture. More than fifty died."

He further testified that if all the sheep had been taken off the cars during the daytime and before the sun had set the loss would have been nominal only. On cross-examination he testified the delay was only three hours. It took about ten hours to load the sheep at Pioneer, but whether the sheep

first loaded were the ones first unloaded plaintiff did not know.

At the close of plaintiff's testimony defendant's motion for a nonsuit was granted by the court. From that judgment plaintiff appeals.

Plaintiff contends that there was evidence tending to prove defendant's negligence, and that its negligence in unreasonably delaying the placing of cars in position for unloading was the proximate cause of the death of the sheep.

It was defendant's duty to place the cars in proper position at the chute with reasonable promptness, so that they could be unloaded without unreasonable delay. If the time of unloading was unreasonably delayed by the acts of defendant, its conduct constituted negligence for which it would be liable if damage resulted. If because of negligent delay the sheep were exposed to a cold wind that caused the death of some of them, such loss would be chargeable to defendant, but if without negligence on the part of defendant the sheep died from exposure to cold plaintiff would not be entitled to recover. There was a delay of not more than three hours. Whether want of diligence by defendant caused the delay does not appear. For some two or three hours no train was at Cavinaugh, and hence no engine could be obtained during that time for placing cars in position. There is no evidence showing that defendant could, without the abandonment of trains or without impeding transportation on its main line, have had an engine and crew at Cavinaugh during the period complained of. The mere fact of delay does not prove negligence, nor does the delay of two or three hours    1-3 in the case at bar furnish any indication that the delay was unreasonable, or that there was any want of diligence on the part of defendant. The sheep having arrived at Cavinaugh in good condition, and being in good condition when taken off the cars, the burden of proof on the charge that there was unreasonable delay in putting the cars in position for unloading was upon plaintiff. The burden was also on plaintiff to prove that the defendant's negligence was the proximate cause of the loss of sheep. It took plaintiff ten

hours to load the sheep. He made no request to unload first the cars that were loaded first. He made no request of the engine crews to put cars in position for unloading while plaintiff and his men were driving sheep to the pasture. In the evening no complaint was made by him of delay. It is apparent from plaintiff's conduct that the complaint about unreasonable delay by defendant was an afterthought only. Plaintiff had unloaded sheep at Cavinaugh before. He knew that no switch engine was kept there and that the work of switching and placing cars in position for unloading must be done with engines detached from passing trains. He knew that Cavinaugh was on the main track, and traffic could not be impeded that the unloading of his sheep might be expedited.

Was any negligence proven? We think not. Is there even a scintilla of evidence tending to prove negligence? We think not. Is there any evidence whatever tending to prove that defendant's negligence was the proximate cause of the damage? We think not. A finding for plaintiff could have no basis save conjecture. If there were any doubt as to the inferences which should be drawn from the undisputed facts in this case, we would not approve the ruling of the district court. Being convinced that reasonable men exercising a fair judgment must arrive at the same conclusion from the facts in this case, and that such conclusion must be that there was no proof of defendant's negligence, we are constrained to hold that the judgment should be affirmed, with costs to respondent. It is so ordered.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.

FRICK, J. (concurring).

I concur. I desire to add to what is said by Mr. Justice WEBER. however, that in this case the parties entered into a contract of shipment wherein the plaintiff agreed to load the sheep at the initial point of shipment and to unload

them after their arrival at their destination. The sheep were agreed to be transported and unloaded at a way station on defendant's line where the facilities for unloading were as stated by Mr. Justice WEBER, and where the business of the defendant did not justify the maintenance of a separate switching engine and crew. These facts were all within the knowledge of the plaintiff when the contract of shipment was entered into. Moreover, the sheep were being transported for pasturage merely, and not to be delivered to market. In view of the foregoing conditions, the unloading of the sheep necessarily was largely under the direction and control of the plaintiff. If, therefore, he desired to have the crew of the second train referred to in Mr. Justice WEBER'S opinion remain to switch and spot the cars, it was his duty to so inform that crew at the time. He could not, under the circumstances, stand by and remain silent while the defendant's servants were carrying on its business in the regular and ordinary way, and then complain that the cars were not promptly switched and spotted. For aught that appears in this record the plaintiff was satisfied with the manner in which the work was being done. At any rate, until he made complaint the train crew had a right to assume that the unloading was being done to suit him. If he was then satisfied, he should not afterwards be permitted to change his position to the detriment of the defendant. Had he complained then and the defendant had refused to switch and spot the cars with reasonable dispatch after he had made such complaint, or if he had requested that the cars be switched and spotted at once, or as soon as that could be done after their arrival, the case would be quite different. No well-considered case, in my judgment, can be found where, under conditions like those in this case, the courts have authorized a finding of negligence. See *Gilbert* v. *Railroad*, 132 Mo. App. 697, 112 S. W. 1002; *Rogers* v. *Texas P. Ry. Co.* (Tex. Civ. App.) 94 S W. 159; *Cincinnati, etc., Ry. Co.* v. *Case*, 122 Ind. 310, 23 N. E. 797; *Sou. Pac. Co.* v. *Arnett*, 126 Fed. 75, 61 C. C. A. 131; *Ecton* v. *C. B. & Q. Ry. Co.*, 125 Mo. App. 223, 102 S. W. 575; *St. L. & S. F. Co.* v. *Vaughan*, 84 Ark. 311, 105 S. W,

573; *Houston & T. C. R. Co.* v. *Davis* (Tex. Civ. App.) 123 S. W. 1160; *Hunt* v. *Railway Co.*, 187 Mo. App. 639, 173 S. W. 61; *Gregory* v. *C., B. & Q. R. Co.*, 174 Mo. App. 550, 160 S. W. 830; *McDowel* v. *Mo. P. Ry. Co.*, 167 Mo. App. 576, 152 S. W. 435; *Ridgeway* v. *Missouri, K. & T. Ry. Co.*, 161 Mo. App. 260, 143 S. W. 532; *Sikes* v. *St. Louis & S. F. Ry. Co.*, 190 Mo. App. 181, 176 S. W. 255.

In *Southern Pac. Co.* v. *Arnett*, supra, it is said:

"Delays incident to ordinary transportation are the same as reasonable delays—as delays consistent with ordinary care."

In *Houston & T C. R. Co.* v. *Davis*, supra, a delay of three hours in stopping a train at a station was held not sufficient to take the case to the jury on the question of negligence.

In *Sikes* v. *St. Louis & S. F. Ry. Co.*, supra, a delay of five and one-half hours, two and three-fourths hours of which time was a delay in switching the cars to the unloading chute, it was held did not constitute an unreasonable delay, and hence was not negligence.

It is not necessary to quote further from the cases, since in those quoted from the live stock was being shipped to · be sold on the market, and yet it was held that the delays referred to did not constitute unreasonable delays.

Under the circumstances I am clearly of the opinion that no culpable negligence is shown.