## NASHVILLE, CHATTANOOGA AND ST. LOUIS RAILWAY, Plaintiff in Error, v. COLUMBIA PRODUCE COMPANY, Defendant in Error.

Middle Section. December 20, 1930.

Fitzgerald Hall, Frank Slemons, Walton Whitwell, W. A. Miller, all of Nashville, and Sam Holding, of Columbia, for plaintiff in error.
Hugh Lee Webster, of Columbia, for defendant in error.

DeWITT, J. The Railway Company has appealed in error from a judgment against it, rendered by the Circuit Court, sitting without the intervention of a jury, in favor of Columbia Produce Company, for $470.72 and costs, as damages for loss on falling market, on a carload of poultry alleged to have been unreasonably delayed in transportation from Columbia, Tennessee, to New York City.

The car left Columbia on Monday morning, April 6, 1925, and by the regular and customary schedule it was due to arrive at the Cameron yards of the Southern Railway Company, near Washington, D. C., at 8 P. M., on Thursday, April 9, 1925; but it actually arrived there at 1:10 P. M. on that day by the train outrunning its schedule. There was a delay of about sixteen hours at Washington, which will be hereinafter discussed. It reached the unloading point at Jersey City, New Jersey, at 8:30 P. M., on Friday, April 10th. It could not be delivered until the next day, which was too late for the Easter Market, for which it was intended. All such trains have to stop in Jersey City. After the arrival of such a car of poultry in Jersey City it required about two hours for placing it for unloading. The poultry had then to be placed in trucks and carried across the river to the market in New York. This poultry was consigned to the Shipper's order, in New York City.

The unloading in Jersey City was done preferably in the morning of each day, but also in the afternoon by what was called a "noon shift." The produce company contends that the car in question should have arrived in Jersey City on the morning of Friday, April 10th; that it would have been unloaded early in the afternoon of that day; that the poultry would have been sold on the Easter market for a sum $470.72 in excess of the proceeds when actually sold on a falling market early in the following week. No question was made as to this difference, so that this was not an issue before the court.

There was a defense of a contractual limitation. The plaintiff filed a written notice of claim with the defendant on May 18, 1926, and instituted this suit on December 12, 1927. The contract provided:

"Claims for loss, damage or injury to property must be made in writing to the orginating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export), or, in case of failure to make delivery, then within six months (or in nine months in case of export traffic) after a reasonable time for delivery has elapsed; provided, that if such loss, damage or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition

precedent to recovery. Suits for loss, damage, injury or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed: Provided, that in case the claim on which suit is based was made in writing within six months, or nine months in case of export traffic (whether or not filing of such claim is required as a condition precedent to recovery), suit shall be instituted not later than two years and one day after notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.''

The question is, whether or not such stipulations apply to an action for damages occasioned by a fall in the market.

This action was based upon the Carmack and Cummins Amendments to the Interstate Commerce Act of Congress (4 Fed. Stat. Ann. (2 Ed.), p. 506, 1920 Suppl., p. 119), imposing liability upon the initial carrier for loss, damage or injury to goods while on the line of a connecting carrier. 4 R. C. L., 907; Fourth National Bank v. N. C. & St. L. Ry., 128 Tenn., 530, 116 S. W., 1144.

It is well settled that the statute includes liability of the initial carrier for loss of market due to a negligent delay on the line of a connecting carrier. N. Y. P. & N. R. Co. v. Peninsula Produce Exchange of Maryland, 240 U. S., 34, 60 L. Ed., 511, L. R. A. 1917A 193.

The said amendments provide as follows:

''Provided that it shall be unlawful for any such common carrier to provide by rule, contract, regulation or otherwise, a shorter period for giving notice of claims than ninety days, for the filing of claims than four months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice; provided, further, that if the loss, damage or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery.''

In Roberts on Federal Liability of Carriers (2 Ed.), Vol. 1, p. 728, referring to the aforesaid provisions, it is said by the author:

''If a claimant cannot bring his case for damages within the terms of the second proviso above quoted, the failure to give written notice of claim, when required by the contract of carriage, will bar recovery. Citing cases. The purpose of the second proviso was to take out of the general rule, declared

by the first proviso, the following three classes of cases: (1) Loss, damage or injury due to delay; (2) damage while being loaded or unloaded; and (3) damage in transit. In these three classes of damage, carriers cannot require notice of claim or filing of claim as a condition precedent to recovery, when caused by 'carelessness or negligence.' "

The United States Supreme Court, interpreting the aforesaid amendment, has ruled that where a shipper seeking to recover damages for injury to property in transit, or loss due to unreasonable delay, has not given notice of the loss within the required time, he must, in order to bring himself within the terms of the final proviso (when no notice is necessary) prove the carrier's negligence as one of fact; that there is no language in the statute from which a purpose may be inferred to vary or limit the common-law rules governing proof of negligence as a fact in issue, and the shipper may follow these rules when he seeks to show (by showing negligence) that no notice of claim was necessary; and that in such case the shipper has the burden of proving the carrier's negligence as one of the facts essential to recovery. C. & O. R. Co., Petitioner, v. Thompson Mfg. Co., 270 U. S., 416, 70 L. Ed., 659; Barrett v. Van Pelt, 268 U. S., 85, 69 L. Ed., 857.

In Jett v. Railroad, 130 Tenn. 237, 169 S. W., 767, as to a provision in a bill of lading for notice of claim for damages to live stock, it was held that there would be no reason for applying the provision to damages occasioned by a fall in the market; that market fluctuations of well-known commodities are matters of record, and the carrier may make investigations and protect itself at one time as well as another against claims so arising—citing cases.

As this action is based on the negligence of unreasonable delay in transportation, under these authorities the stipulations for giving notice and bringing suit within the periods respectively prescribed are not applicable. The action was brought within the period prescribed by the law of the State, which controls.

Proof of delivery in the usual time according to the custom and course of the carrier's business is prima facie evidence of reasonable time. So. Pac. Co. v. Arnett, 126 Fed., 75; Lowe v. East Tenn. etc. R. Co., 90 Ga., 85, 15 S. E., 692; Ecton v. Chicago etc. R. Co., 125 Mo. App., 223, 102 S. W., 575; Schwab v. Union Line, 13 Mo. App., 159.

We must now determine whether or not there was an unusual delay, and, if so, whether or not it was due to negligence or causes that were excusable. A carrier is not an insurer against delay in the transportation of freight. Railroad v. Brown, 1 Higgins, 269. It is the carrier's duty to forward freight without delay and as speedily as practicable, and if it be unnecessarily and negligently detained by it, it is liable for the loss. Lamont v. Railroad, 9 Heisk., 58.

But this means that the carrier is bound to deliver within a reasonable time in the absence of a special contract—according to the usual course of business, with all convenient dispatch. Railroad v. Nelson, 1 Cold., 272; Baker v. Railroad, 10 Lea, 304; 10 C. J., 284; 4 R. C. L., 737. The law does not attempt to fix by rule what is a reasonable time. Each case is referred to its own peculiar circumstances. 4 R. C. L., 738; 10 C. J., 286. Proof of delivery in the usual time according to the custom and the course of the carrier's business is prima facie evidence of reasonable time. Southern Pacific Co. v. Arnett, 126 Fed., 75; Lowe v. East Tennessee etc. R. Co., 90 Ga., 85, 15 S. E., 692; Ecton v. Chicago, etc. R. Co., 125 Mo. App., 223, 102 S. W., 575.

No complaint is made that the car in question was delayed beyond the usual and reasonable time of arrival at the Cameron Yards at Washington. The contention is that it was delayed inexcusably for sixteen hours in the Cameron and Potomac Yards at Washington. The Cameron Yards are the terminals of the Southern Railway. The Potomac Yards are the terminals of the Pennsylvania Railroad. The car arrived at the Cameron Yards at 1:10 P. M., on Thursday, April 9th. By the regular schedule it would have arrived there seven hours later. There was a regular train which left the Potomac Yards at 2:30 P. M. and carried such freight but the usual time required for breaking up the other train in the Cameron Yards and arranging the waybills for interchange was three hours, then about half an hour was required to transfer the car to the Potomac Yards to be hauled over the Pennsylvania Railroad to Jersey City. This excused the failure to attach the car to the train leaving at 2:30 on Thursday. The car was kept in the Cameron Yards for eight hours. The excuse given for this delay is that there would be no train to carry this car from the Potomac Yards until 4:30 A. M. the next day. On the other hand, it is shown that there was a train operated at that season, which carried strawberries from the South to New York and which left the Potomac Yards at 10:30 P. M., April 9th. It was not scheduled to stop at the yards for unloading poultry at Jersey City, as the cars had to be floated on barges across to the New York market house. This train arrived at Jersey City at 3 P. M., on Friday, April 10th. This train could have carried the car of poultry to Jersey City, but the car would not have been ready for unloading until the next morning.

The car of poultry, which arrived at Jersey City at 8:30 P. M., April 10th, was placed at the unloading yard at 7 A. M., Saturday, April 11th. It was not unloaded until the afternoon of the following Monday. An agent of the shipper accompanied the car and cared for the poultry.

There was a local train which left the Potomac Yards at 3:30 A. M., Friday, the 10th, carrying perishable freight to New York.

This train was overtaken by the train carrying the car of poultry, which actually arrived at Jersey City four hours ahead of its schedule time.

This court is unable to find, from the facts and circumstance that there was unreasonable or inexcusable delay in the transportation and delivery of this car of poultry. The time was necessarily too short for making the arrangements and transferring the car and attaching it to the Pensylvania train which left the Potomac Yards at 2:30 P. M., on Thursday. There is no evidence that the car would have been ready for unloading at Jersey City any earlier than it was ready, had it been attached to the strawberry train or the local train which left at 3:30 A. M., on Friday. If there was any negligence in failing to attach this car to either of these trains it did not result in injury to the plaintiff for the car would not have been unloaded earlier than it was unloaded. It is not sufficient merely to show negligence. It must also be shown that injury resulted proximately from the negligence.

There is undisputed evidence that the Pennsylvania Railroad Company. had only two schedules of freight trains per day running from the Potomac Yards that could receive freight from the terminals of the Southern Railway, but these trains were operated in sections. The schedules were arranged so that the last section would run on the schedule time. However,. there is no evidence as to when any section left Washington earlier then the regular train on which this car was carried. The only evidence of trains which left Washington and which could carry such • freight after the . arrival of this car at the Cameron Yards relates to the trains which have been hereinbefore mentioned.

The burden is on the shipper in such case to show negligence. It is not shown by the preponderance of the evidence that this car of poultry was really delayed in transit longer than the usual and customary time for transportation. The only evidence that an earlier arrival, for the Easter market in New York, would have been according to the customary time of transportation of such freight, con- -sisted in a statement by the plaintiff's employee who accompanied the car, that by leaving Columbia on April 6th, he could count on getting to New York for the Easter market, and that this was based on his former experience in carrying live poultry over this route. This statement is too meager and is unconvincing in view of the real facts as to this shipment. It is true that there was a delay of sixteen hours in the yards at Washington, but it is not shown that had there not been such delay the car would have arrived and been unloaded in time for the Easter market. Had the Southern Railway train arrived at the Cameron Yards on its regular schedule time it would have been at 8:30 P. M., on Thursday, and it could not have left Washington any earlier than it did leave. It

is because the car arrived in Washington seven hours earlier than the time which would not have been a basis of complaint, and was then not sent away during the time which had been saved, that complaint is made that there was unreasonable delay.

Therefore the plaintiff has not carried the burden imposed upon it by law to prove the negligence alleged. It results that for this failure to prove negligence the judgment of the Circuit Court will be reversed and the suit dismissed at the cost of the defendant in error.

Crownover, J., and Higgins, S. J., concur.