HENRY A. GILBERT, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, October 5, 1908.**

1. **CARRIERS: Livestock: Delay: Evidence.** Delay in reaching the destination, standing alone, is not sufficient to support a reasonable inference of negligence, which must always be affirmatively proven, but circumstances that even slightly tend to show a negligent origin of unusual delay will support such an inference; and the evidence is held sufficient to send the question of negligence to the jury.

2. ———: **Contract: Feeding.** Though the contract of shipment required the shipper to feed and water his stock, yet where for a consideration he modified his contract, he is liable for the violation of the modified agreement; and where there is conflicting evidence, such questions are for the jury.

3. ———: **Horses: Delay: Sickness.** Where for want of feed horses are rendered more susceptible to disease than otherwise, such condition may be considered as the direct cause of the injuries resulting from such disease.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey*, Judge.

AFFIRMED.

*Brown & Dolman* for appellant.

(1) The evidence is insufficient to warrant a finding that the horse which died contracted pneumonia or that the other two who became sick contracted the fever as the result of any negligence on defendant's part. Railroad v. Brosins, 105 S. W. 1131. (2) The burden of proof was upon the plaintiff to show not only that the defendant negligently failed to feed and water the horses and negligently failed to transport them within a reasonable time, but that such neglect caused the diseases from which the horses suffered or was the active cooperating cause. George v. Railroad, 57 Mo.

App. 358; Witting v. Railroad, 101 Mo. 631; Hurst v. Railroad, 117 Mo. App. 25. (3) The evidence is undisputed that the horses went through on the first and only trains scheduled or otherwise leaving each terminal station after the arrival of the horses, and that all trains arrived at each terminal station and at destination practically on time. "Mere delay standing alone is not sufficient to support a reasonable inference of negligence, which is a positive wrong and always must be proven affirmatively." Bushnell v. Railroad, 118 Mo. App. 618.

*Gabbert & Mitchell* for respondent.

(1) The court committed no error in allowing the case to go to the jury on the ground that there was sufficient evidence to warrant a finding that the three horses arrived at Lincoln in a sick, weakened and unsound condition as the result of negligence of the defendant. Anderson v. Railroad, 93 Mo. App. 677; Bushnell v. Railroad, 118 Mo. App. 627; The Otis Co. v. Railroad, 112 Mo. 631; Lachner Bros. v. Express Co., 72 Mo. App. 13; Hamilton v. Railroad, 80 Mo. App. 600; Cash v. Railroad, 81 Mo. App. 113. (2) The burden is upon the defendant to explain its failure to unload the horses into the yards at Lincoln, from midnight until 10:30 a. m. and that the time said animals were in transit was not unreasonable. Sloop v. Railroad, 93 Mo. App. 609; Anderson v. Railroad, 93 Mo. App. 677; Lachner v. Express Co., 72 Mo. App. 19. (3) The contract pleaded by defendant was modified by the new contract made when the company accepted Gilbert's dollar and agreed for that special consideration to properly water and feed the horses at Jansen, Nebraska. The making of this new contract rendered the company liable for any injury to the horses caused by a failure to properly feed and water them. 101 Live Stock Co. v. Railroad, 100 Mo. App. 690.

Gilbert v. Railroad.

JOHNSON, J.—Action by a shipper of live stock against a common carrier to recover damages for injuries to the property alleged to have been caused by the negligence of the carrier.   On June 3, 1906, plaintiff delivered three horses to defendant at its station at Dearborn, Platte county, for shipment to Lincoln, Nebraska.   He alleged in the petition that when the animals were delivered to defendant they were properly loaded in the car and were in a sound, healthy condition and that it became the duty of defendant to transport them to their destination within a reasonable time and "to properly care for and feed and take care of and to exercise all reasonable care and diligence for the preservation and the soundness and healthfulness of the said horses."   Breach of this duty is charged in the following language:  "That the defendant, on the contrary, failed to exercise due care and diligence in properly feeding, watering and taking care of said horses, and did carelessly and negligently fail to do and provide for said horses, and carelessly and negligently failed to feed and water said horses, and carelessly and negligently failed to transport them within a reasonable time; that, whereas, said horses should have arrived at Lincoln, Nebraska, under ordinary travel, at eleven a. m., June 4, 1906, they did not arrive at Lincoln, Nebraska, until ten a. m. June 5, 1906; that during all the time from the time they were received at Dearborn, Missouri, until they arrived at Lincoln, Nebraska, defendant carelessly and negligently, by and through its agents, servants and employees, failed to water and feed and care for said stock so that upon arrival at Lincoln of said stock, they had, on account of said carelessness and negligence of defendant, its servants, agents and employees, become sick and weakened and unsound to such an extent that one horse of the value of two hundred and fifty-seven dollars ($257) died in consequence of such careless and negligent treat-

ment on the part of defendant; that one horse of the value of three hundred and fifty dollars ($350), the price and value of said horse when he was so placed upon the cars of the defendant at Dearborn, Missouri, so depreciated in value that he was worth only the sum of one hundred and fifty dollars ($150) when he arrived at Lincoln, Nebraska, in consequence of said careless and negligent treatment on the part of defendant; and one horse of the value of three hundred dollars ($300) . . . so depreciated in value that upon his arrival at Lincoln, Nebraska, he was only of the value of $150 on account of the careless and negligent treatment of said horse by defendant."

The answer of defendant, in addition to a general denial, interposed defenses founded on the terms of a written contract which, it is conceded, was entered into by the parties at the time the property was delivered for shipment. Among the provisions of this contract designed to limit the common law liability of the carrier, those chiefly relied on by defendant are the following:

"Second: That the live stock covered by this contract is not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market.

"Third: That the first party shall be exempt from liability for loss or damage to the person or persons and property covered by this contract, arising from derailment, collision, fire, escapement from car, heat, suffocation, overloading, crowding, maiming or other accidents or causes, unless the injuries arising from said causes are the direct result of negligence on the part of the carrier.

"Fourth: That the second party shall assume all risk and expenses of feeding, watering, bedding, and otherwise caring for the live stock covered by this con-

tract, while in cars, yards, pens or elsewhere, and shall load and unload the same at his own expense and risk."

Plaintiff testified that he loaded the horses in the car on Saturday morning, June 2, 1906, and delivered them to defendant in time for the car to be put in a train which left Dearborn at 9:35. The horses had been fed and watered that morning and were sound and in good health. They were saddle and harness horses and plaintiff was taking them to Lincoln to sell them at that place. He rode in the car to Rushville, where he left the train and proceeded to St. Joseph by passenger train. The horses reached defendant's yards at St. Joseph at about eleven o'clock that morning and remained there during the day. Plaintiff fed and watered them there and at eight o'clock that evening left for Lincoln on a passenger train, where he arrived about one o'clock that night. Early the next morning, he inquired of the agent of defendant at Lincoln if the horses had arrived and received a negative answer. At noon, he inquired again. We quote from his testimony: "After I went down there and inquired three or four times as to these horses, and he didn't seem to know, I told him, 'You must find those horses, they must be fed and watered;' he said he didn't know whether he could or not. I said 'I will have to request you to wire down and find the horses,' and he finally got at it, and found them at Jansen (an intermediate junction point) about 1:30 Sunday afternoon. He said 'If you will guarantee the charges, I will wire the agent to feed and water the horses.' I said, 'I not only will guarantee the charges, but I will give you the money,' and I asked him how much it was, and he said: 'A dollar,' and I pitched him a dollar, and said 'Here's the money. Attend to those horses.'"

At four o'clock Sunday afternoon, one o'clock Monday morning and again at eight o'clock, he repeated his inquiries about the shipment and on each occasion was

informed by the agent that it had not arrived. At about half past ten o'clock, he was informed by the agent that the horses were in the yards, and he went at once to their relief. He found them in a badly damaged condition from lack of food and water. Their appearance and actions indicated that they had received no attention after they left St. Joseph; two of them were suffering from "shipping fever" from which they recovered in about five days; the third had pneumonia and died on the following Monday.

Plaintiff introduced evidence tending to show that twenty-three hours would have been a reasonable time to consume in the transportation. The agent of defendant at Dearborn testified: "Q. What is the schedule time between Dearborn and Lincoln for shipment of freight, horses, at that time? A. About twenty-three hours." The evidence of plaintiff does not attempt to show the cause of the delay.

On the part of defendant, the evidence is to the effect that the transportation was accomplished in schedule time, that the horses were fed and watered at Jansen by its agent at that place and that they arrived in Lincoln at about twelve o'clock Sunday night. It is denied plaintiff was misinformed by anyone in the service of defendant relative to the time of arrival of the shipment at Lincoln. The issues of negligence submitted to the jury are thus defined in the first two instructions given at the request of plaintiff. They are as follows:

"The jury are instructed that if you find from the evidence that the plaintiff on June 2, 1906, delivered three horses mentioned in evidence to defendant's agent at Dearborn, Missouri, for shipment to Lincoln, Nebraska, and that defendant accepted said horses for shipment, then it became and was the duty of defendant to transport said horses in a reasonable time, and if you further find that the defendant carelessly and negli-

gently failed to transport said horses within a reasonable time to Lincoln, Nebraska, and further that plaintiff paid or guaranteed to defendant's agent at Lincoln, Nebraska, the money demanded for the feeding and watering of said horses at Jansen, Nebraska, and that defendant agreed to do so, and that defendant's agents and servants failed to so feed and water said horses and that by reason of said unreasonable delay in transportation, if you so find there was unreasonable delay, and further the negligent failure to feed and water, if you find there was such failure as above stated, said horses became sick and unsound and of less value, to plaintiff's damage, you will find for the plaintiff.

"The court instructs the jury that even though they may believe from the evidence that the horses mentioned in evidence arrived at Lincoln at twelve p. m. on Sunday, June 3d, yet if you believe from the evidence that after repeated inquiries by the plaintiff, of defendant's agents at Lincoln after the arrival of said horses, said agents informed plaintiff that said horses had not arrived, you may compute the time of delay in notifying the plaintiff pursuant to this inquiry of the arrival of the horses after they had so arrived as a part of the time of their transportation."

On behalf of defendant, the jury were instructed: "The jury are instructed that the defendant was under no obligation to feed and water the horses in transit, but that that obligation rested upon the plaintiff, and in the absence of any special agreement or understanding on the part of the defendant, its servants or agents, to perform such service, it is not liable for a failure to feed and water.

"The burden of proof is upon the plaintiff before he can recover in this case, to show by a preponderance of the evidence that the injury, if any, to plaintiff's horses was due to the neglect or carelessness of the defendant in failing to transport the horses in the

manner and form and within the time prescribed by the contract introduced in evidence, or in failing to feed and water said horses, and unless you so find, your verdict must be for the defendant.

"The jury are instructed that plaintiff is not entitled to recover for the sickness or death of any of said horses unless you find said sickness or death was caused by a failure on the part of the defendant to feed and water said stock, and a failure to transport said horses within a reasonable time to their place of destination, and before plaintiff is entitled to recover on account of any failure of the defendant to water and feed said horses you must believe from the evidence that the defendant, by its agents or servants, undertook and agreed to feed said horses at Jansen, Nebraska.

"If you find from the evidence that plaintiff's horses were fed and watered at Jansen, Nebraska, then defendant was guilty of no negligence in that respect."

The jury returned a verdict for plaintiff in the sum of $200, and defendant appealed.

First, we shall dispose of the questions arising from the contention of defendant that the court should have peremptorily directed a verdict in its favor. Since it is conceded the shipment was made under a special contract which exempted defendant from liability on account of delay, the burden of proof was on the plaintiff and remained with him to the end of the case to show that the delay was unreasonable and was the result of negligence on the part of defendant. "While it may be granted that evidence of mere delay standing alone is not sufficient to support a reasonable inference of negligence, which is a positive wrong and always must be proven affirmatively, yet from the very nature of the relation of carrier and shipper circumstances that even slightly tend to show a negligent origin of the unusual delay will support an inference of negligence. It is enough for plaintiff to disclose circumstances suf-

ficient to raise a fair inference of negligence and especially is this so where the means of showing how the delay occurred is with the defendant and not the plaintiff." [Bushnell v. Railroad, 118 Mo. App. 618; Anderson v. Railroad, 93 Mo. App. 677; Witting v. Railroad, 101 Mo. 631; Otis Co. v. Railroad, 112 Mo. 622; Sloop v. Railroad, 93 Mo. App. 605; Botts v. Railroad, 106 Mo. App. 397; Fulbright v. Railroad, 118 Mo. App. 486.]

We think the evidence as a whole does support a reasonable inference of negligence. Not only was there an unusual delay of more than twenty-four hours, but at least half of it apparently was inexcusable. The uncontradicted evidence of defendant established the fact that the horses reached the yards in Lincoln at midnight on Sunday. An hour later, plaintiff, who had been exhibiting the utmost anxiety concerning their welfare, was told by the agent that they had not arrived. The agent knew plaintiff thought the horses were in need of attention and was keeping a sharp lookout for their appearance and it was his duty to exercise reasonable diligence to learn of their arrival and to inform plaintiff of that fact when he applied for information. If the jury believed the testimony of plaintiff, they were entitled to infer that the agent was negligent in the performance of this duty and that had he discharged it properly, plaintiff could and would have relieved the suffering of the animals and thereby prevented the injury to them.

Whether the delay was negligent or unavoidable, defendant should be held liable for the injurious consequences of its failure to feed and water the horses at Jansen on Sunday afternoon. In accepting compensation for such attention, defendant modified the contract of transportation to the extent of making the giving of such attention one of its duties. The evi-

Gilbert v. Railroad.

dence of plaintiff tends to show that the horses were not fed and watered at Jansen and that this omission was the direct cause of the injury. No error was committed in overruling the demurrer to the evidence and we find the issues of negligence were properly submitted in the instructions given to the jury.

It is argued by defendant that "the evidence is insufficient to warrant the finding that the horse which died contracted pneumonia, or that the other two which became sick contracted the fever as the result of any negligence on defendant's part," but we must rule against defendant on this point. The expert evidence introduced by plaintiff is to the effect that when animals suffer from deprivation of food and drink, they are more susceptible to the ravages of disease germs than they otherwise would be. Obviously, inability to resist the attack of a disease should be regarded as a direct cause of the injurious results of such attack. Under all the facts and circumstances of the situation disclosed, it is reasonable to infer that the animals sickened because of their weakened powers of resistance, and that the negligence of defendant was the direct cause of that condition.

The trial of the cause was free from error and it follows that the judgment must be affirmed. All concur.