PARSONS-APPLEGATE COMPANY, Respondents, v. THE LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, March 29, 1909.

1. **CARRIERS: Pleading: Delay: Notice.** Under the pleadings and the evidence the primary and dominant issues were whether or not an unreasonable time had been consumed in the transportation of the goods, and if it had, was the delay justly negligent.

2. ———: ———: **Delay: Change of Route: Negligence.** On the case pleaded the gravamen is negligence of the carrier in diverting the car from the route designated. Such diversion is not negligence *per se*, but where it produces an unusual delay and is the proximate cause of injury to the property it is actionable, and on the facts the question was properly sent to the jury.

3. ———: ———: **Negligence.** Mere delay will not support an inference of negligence, but if buttressed by circumstances slightly tending to a negligent origin of the delay, it will warrant such inference.

4. ———: ———: ———: **Injury: Measure of Damages.** Usually damages for failure to deliver goods on time is the difference between the market value at the time they should be delivered and at the time they were delivered; but where the pleadings set up the element of damage specifically, the recovery must be restricted to the elements alleged; and, *held*, the verdict is conclusive when measured by the latter rule.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED.

*Wash Adams* and *Chas. B. Adams* for appellant.

(1) The court erred in refusing defendant's instruction two, directing a verdict for defendant at the close of all the evidence. Ratliff v. Railroad, 110 S. W. 607, 118 Mo. App. 644; Gashweiler v. Railroad, 83 Mo. 112; Holzclaw v. Duff, 27 Mo. 392. (2) The action is bottomed upon defendant's negligence in unreasonably delaying the delivery of the tomatoes and the burden rested upon plaintiff to show by a preponderance of the evidence that notice of the arrival of the car was not given to plaintiffs before the damage resulted in order to establish defendant's negligence. Stanard M. Co. v. Transit Co., 122 Mo. 258; Read v. Railroad, 60 Mo. 199; Witting v. Railroad, 101 Mo. 639. (3) The court erred in giving plaintiffs' instruction one. Smoot v. Kansas City, 194 Mo. 515; White v. Chaney, 20 Mo. App. 397; Slattery v. St. Louis, 120 Mo. 183; Wright v. Fonda, 44 Mo. App. 642; George v. Railroad, 40 Mo. App. 433; Bender v. Dugan, 99 Mo. 126; Bank v. Murdock, 62 Mo. 70; 9 Am. and Eng. Ency. of Law (2 Ed.), 194 (note); Porter v. Beard, 124 U. S. 409; Evans v. Dyke, 121 Mo. App. 277; Henry v. Railroad, 113 Mo. 525; Gashweiler v. Railroad, 83 Mo. 112; Buddy v. Railroad, 20 Mo. App. 209; Cramer v. Express Co., 56 Mo. 524; Porter v. Railroad, 20 Ia. 13; Aronson v. Railroad, 70 Pa. St. 70; Kendall v. Bain, 46 Mo. App. 590; Jordan v. Webber Co., 72 Mo. App. 325; Carroll v. Campbell, 110 Mo. 557; Railroad v. Cleary, 77 Mo. 634; McNichols v. Nelson, 45 Mo. App. 446; State v. Bromley, 53 Mo. App. 126; Voegli v. Pickle Co., 49 Mo. App. 643; Wojtylak v. Coal Co., 188 Mo. 260.

*Joseph Johnson* and *Paxton & Rose* for respondents.

(1) In passing on defendant's demurrer to the evidence the court could not consider defendant's evi-

dence. Schultze v. Railroad, 32 Mo. App. 438; Hollo-
way v. Tel. Co., 195 Mo. 149. (2) The instructions,
taken together, fairly state the law. Nepher v. Wood-
ward, 200 Mo. 179; State v. Sharp, 183 Mo. 715; Di-
cherd v. Railroad, 111 Mo. App. 117; Squiers v. Kan-
sas City, 100 Mo. App. 628; Barry v. Railroad, 98 Mo.
93. (3) Both sides claimed that actual delivery of
the car took place immediately after the notice, so that
the word "delivery" used in plaintiffs' instruction
could not in any event have misled the jury.

JOHNSON, J.—Action against a common carrier
brought by the consignee and owner of a carload of
tomatoes to recover damages for an unreasonable delay
in the transportation alleged to have been caused by the
negligence of defendant. The cause is here on the ap-
peal of defendant from a judgment against it of six
hundred dollars.

Material facts disclosed by the evidence of plain-
tiffs are as follows: Plaintiffs are partners engaged in
dealing in fruits and vegetables in Kansas City, under
the firm name of Parsons-Applegate Company. They
bought a carload of tomatoes in Jacksonville, Florida,
which was received by the Seaboard Air Line Railroad
Company on April 21, 1905, for transportation from
Jacksonville to Kansas City. A through bill of lading
was issued on that date in which plaintiffs were named
as consignees and the route of the shipment was speci-
fied as "via L. & N. and Frisco," which meant that the
initial carrier, the Seaboard Air Line, would haul the
car to Montgomery and there deliver it to defendant, the
Louisville & Nashville Railroad Company, for trans-
portation to Birmingham, Alabama, and delivery at
that place to the St. Louis & San Francisco Railway
Company (commonly called "the Frisco"). The lat-
ter company was to transport the car to Kansas City.
The property was to be carried as perishable freight
and the evidence shows that the Frisco has the shortest

line of railroad between Birmingham and Kansas City and operates fast trains for the carriage of such freight. Further, it appears from the evidence of plaintiffs that had the car in question been transported within a reasonable time over the route specified, it would have arrived in Kansas City on April 28th, and the tomatoes would have come into the possession of the consignees in first-class condition for the market. On and after April 28th, the day the car should have reached its destination, plaintiffs made daily inquiries at the Frisco station in Kansas City to ascertain if the car had arrived. They also telephoned to the stations of other railroads that handled freight from the southeast, but did not think to telephone to the "Rock Island" station as they did not know that freight from Florida might be brought in over the St. Louis line of that company. About noon of May 3, plaintiffs received a telephone message from the "Rock Island" that the car was on its unloading track. They immediately unloaded the car and found the tomatoes over-ripe and damaged. The car contained 472 crates which could have been sold on the market April 28th at $4 per crate. Between that date and May 3rd, the market for tomatoes of that class in good condition, declined seventy-five cents per crate. It was found that all the crates contained spoiled tomatoes and it was necessary to sort over the whole shipment. The expense of sorting them was $50; the spoiled tomatoes, amounting to fifty crates, were a total loss and the remainder of the shipment suffered a depreciation of seventy-five cents per crate from the decline in the market.

It is conceded that instead of delivering the car to the Frisco at Birmingham, defendant hauled it over its own line to East St. Louis and there delivered it to a terminal railroad which hauled it to St. Louis and delivered it to the Rock Island. This was a longer route by ninety-three miles than the Frisco and in-

136 App—32

volved a change of roads at St. Louis which the evidence, in the light most favorable to plaintiffs shows is likely to consume much time, especially when the yards at this important center are in a congested condition. The evidence of defendant is to the effect that the car arrived in Kansas City at about 6 o'clock p. m., April 28th, that it was sent to the unloading track at 7 o'clock the next morning, that plaintiffs were notified by telephone between 2 and 4 o'clock in the afternoon that the car was ready to be unloaded, the slight delay in giving notice being caused by an error in the billing in the name of one of the plaintiffs. Further, the witnesses for defendant state that the transportation was accomplished in a reasonable time and in nine hours less than would have been consumed had the shipment been sent over the Frisco. In explanation of this statement, it is asserted that a delay of thirteen hours would have been encountered at Birmingham on account of the fact that the fast train on the Frisco was not scheduled to leave until thirteen hours after the arrival of the car at Birmingham. The allegations of the petition of particular concern to us in the present inquiry are as follows:

"That said defendant in violation of said instructions did not carry said tomatoes to Birmingham and there deliver the same to the Frisco Railroad Company, as directed, but on the contrary, in violation of said shipping instructions and without the knowledge or consent of the plaintiffs, the defendant diverted said car from the route aforesaid, and carried same around by Nashville, Tennessee; Evansville, Indiana, and St. Louis, Missouri, and at St. Louis said car was delivered to the Rock Island Railroad Company and hauled by it to Kansas City.

"That it required five days longer to carry said car over said last-named route than it would have required to carry the same over the route directed by plaintiffs, so that said car instead of arriving in Kansas City on

the 28th day of April, 1905, did not, in fact, arrive until May 3, 1905.

"That said delay was caused by the wrongful and neglectful act of the defendant in failing and refusing to follow the shipping instructions of plaintiffs aforesaid, and in diverting said car as aforesaid.

"That said load of tomatoes consisted of four hundred and eighty-six crates; that tomatoes in Kansas City on the 25th day of April, 1905, were worth, in the market the sum of four dollars per crate; that on May 3, 1905, the market had declined so that the market value of tomatoes on said day was three and twenty-five one-hundredths dollars; that on account of the delay in the transportation of said tomatoes caused by the diversion aforesaid, said tomatoes had, many of them, rotted and spoiled so that over fifty crates of said tomatoes of the value of two hundred dollars, were wholly lost to plaintiffs, and plaintiffs were put to great trouble and expense in sorting the spoiled from the good tomatoes, which said trouble and expense amounts to fifty dollars, so that plaintiffs allege that by reason of the premises, they have sustained damage in the sum of six hundred fourteen and fifty one-hundredths dollars." The answer is a general denial.

At the request of plaintiffs, the court instructed the jury "that if you find from the evidence that the defendant changed the routing of the car of tomatoes consigned to plaintiffs without the consent or knowledge of plaintiffs, and instead of transferring said car to the St. Louis and San Francisco R. R. Co. at Birmingham, transported said car by its own line to St. Louis and there transferred it to the Rock Island which carried said car to Kansas City, Mo., and because of said change in the routing there was an unreasonable delay in the delivery of said carload of tomatoes to plaintiffs, and because of said delay said tomatoes were damaged in quality and the market price of the same declined, then you will find for the plaintiffs and as-

sess their damages at the difference between the market value of said carload of tomatoes when delivered to plaintiffs and the market value of the same when they would have. been delivered to plaintiffs had no such unreasonable delay occurred, not exceeding the sum of six hundred and fourteen and fifty one-hundredths dollars, with interest at the rate of six per cent per annum upon the total amount of said damages from the date of the demand upon defendant for the same."

It is argued by defendant that a verdict in its favor should have been directed peremptorily. We do not think the question of whether the relation of defendant to the shipment at the time of its delivery to plaintiffs was that of carrier or warehouseman is of any importance in the solution of the questions raised by the demurrer to the evidence. The evidence of plaintiffs tends to show an unreasonable delay in the transportation, not in the giving of notice after the car arrived. The evidence of defendant tends to show no delay in the transportation and the giving of notice within a reasonable time. In this position of the parties, the subjects of the giving of notice and of the reasonableness of the time in which the notice was given were not treated or submitted to the jury as issues of fact, but the primary and dominant issues presented by the pleadings and evidence were whether or not an unreasonable time had been consumed in the transportation from Birmingham, and if it had, was the delay due to negligence of defendant in diverting the car from the route specified in the contract. Considering the evidence in the light most favorable to plaintiffs, a position we must occupy in ruling on the demurrer to the evidence, a strong inference arises that there was an unreasonable delay in the transportation. Indeed, the witnesses for both parties agree that the car should have arrived in Kansas City on April 28th. The controverted fact is the date of its arrival.

The evidence of plaintiffs supports the conclusion that the date in question was May 3rd. That of defendant fixes it at April 28th. The evidence of each party being substantial, an issue of fact was raised for the jury to solve, which, if decided in favor of plaintiffs—as it was—would demonstrate beyond peradventure that an unreasonable delay of five days had occurred in the transportation. We must assume this to be the fact and our next inquiry is to ascertain if the evidence of plaintiffs will authorize a reasonable inference that the unreasonable delay was the direct result of the negligence pleaded in the petition. The gravamen of the action is negligence of defendant involved in the act of diverting the car at Birmingham. The act of changing the route of a shipment from that stated in the contract is not negligence *per se.* Things may·happen in the course of transportation that make a diversion necessary. But it is not even suggested by defendant that after the car left Jacksonville anything occurred to call for a change in its route and the evidence of plaintiffs leads reasonably to the conclusion that defendant diverted the car to a· longer and slower line for no better reason than to obtain for itself the benefit of a longer haul. Further, it appears that the unusual delay was the result of the diversion and was the proximate cause of the injury to the property. These facts. made out a case to go to the jury. While it is true that proof alone of an unreasonable delay will not support an inference of negligence, it is well settled that such proof when buttressed by evidence of circumstances which even slightly tend to show a negligent origin of the delay will warrant such inference. [Gilbert v. Railway, 112 S. W. 1002, 132 Mo. App. 697, and cases cited.] The act of changing, without good cause, the route of the car to a longer and slower line, when coupled with proof of unreasonable delay is evidence of negligence sufficient to raise an issue of fact. We are not overlooking the testimony of defendant's witnesses

to the effect that the line selected, though longer, maintained a service that would bring the car to its destination in a shorter time than the route prescribed in the contract. But that evidence is not conclusive and could serve only as an evidentiary defense to the proof of plaintiffs. No error was committed in the refusal to sustain the demurrer to the evidence.

The instruction given at the request of plaintiffs is erroneous in the measure of damages submitted. Three elements of damage are specifically alleged in the petition, viz., first, that the good tomatoes were depreciated in value seventy-five cents per crate, by a decline in the market; second, that fifty crates were spoiled and, third, that expense of fifty dollars was incurred in sorting. The instruction does not mention these elements, but directs the jury to assess the damages "at the difference between the market value of said carload of tomatoes when delivered to plaintiffs and the market value of the same when they would have been delivered to plaintiffs had no such unreasonable delay occurred." This is the correct rule for the assessment of damages to personal property negligently injured by a carrier in the course of transportation where the allegations of the petition will warrant its application. But in cases such as the one in hand, where the elements of damage are specifically pleaded, the recovery must be restricted in the instructions to the elements alleged. The rule stated in the instruction does not include the item of the expense of sorting and, therefore, the verdict cannot be said to include that item. The remaining two items alleged in the petition aggregate $527, viz.:

50 crates spoiled at $4 per crate ......$200.00
436 crates depreciated 75c per crate by
     decline in market ..............$327.00

                         $527.00

There is evidence tending to show greater damage to the four hundred and thirty-six crates than that pleaded and the conclusion cannot be escaped that the jury assessed more damages on that score than were claimed. It is clear the instruction enlarged the scope of the cause of action pleaded and that the error was prejudicial. In other respects, the case was fairly tried, but for the error noted, the judgment must be reversed and the cause remanded. All concur.