W. E. MUIR, Respondent, v. MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 17, 1913.

1. CARRIERS OF STOCK: Delay in Shipment: Evidence. A showing of mere delay and nothing more is insufficient to support a recovery of damages for delay in the transmission of live stock. But when the delay is shown under such surroundings as to raise even a slight inference that the delay had its origin in negligence, this is sufficient, especially in the case of an unaccompanied shipment, and the knowledge of what caused the delay is with the carrier and not the shipper.

2. ———: ———: ———: Inference of Negligence. Where, in addition to the delay, it was shown that there were no accidents or trouble of any kind, that the route was clear and open, no washouts, wrecks or breakdowns, that the trains ran when they did run, without a hitch of any kind, this was sufficient to raise an inference of negligence.

3. ———: ———: Actionable Damages. Where the petition does not declare upon a failure to reach a certain market but upon the loss sustained by reason of the difference in flesh and condition of the animals on arrival from that in which they would have been had no delay occurred, the measure of damages is the difference in the market value of the animals in one condition from their market value in the other. This is true, as to the loss on account of the condition of the animals, whether they are shipped to market or held for some other purpose.

4. ———: ———: ———: Question for Jury. In this case whether the animals were diminished in value by the delay and if so, the amount of the loss sustained thereby, are questions for the jury, not for the appellate court.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

AFFIRMED.

*D. W. Herring* and *Lee W. Hagerman* for appellant.

*C. M. Hay, J. W. Tinchner* and *H. N. Eversole* for respondent.

TRIMBLE, J.—Suit to recover damages for negligent delay in the shipment of forty-eight head of mules from Windsor to Fulton, both in Missouri. The route of shipment over defendant's line is from Windsor northeast to Sedalia twenty miles away, then from Sedalia east sixty miles to North Jefferson. From this last point to Fulton, a distance of twenty-five miles, the shipment went over the Chicago & Alton road, defendant having no line to Fulton.

The ordinary and usual time required to transport a shipment from Windsor to Fulton was twenty-four hours or less. The shipment in this case occupied something over fifty-two hours. It started at Windsor at 2 p. m. August 15, got to Sedalia at 6:10 p. m. that day, going a distance of twenty miles in four hours and ten minutes. At Sedalia the mules remained from 6:10 p. m. of the 15th to 10:15 a. m. of the 16th, a period of sixteen hours and five minutes. During this period they were watered and fed in the pens. At 10:15 of the 16th the mules were started to North Jefferson and arrived there at 4 p. m. of that day, travelling sixty miles in five hours and forty-five minutes. There was only one freight train a day from North Jefferson to Fulton and its time for leaving North Jefferson was one o'clock, although frequently it left later than that; and on this particular day it left at 2:30. As the mules arrived at North Jefferson at four o'clock, of course the train for Fulton had gone, so the defendant fed and cared for the mules at Mokane until the next day, the 17th, and then delivered them to the Chicago & Alton, which took them on to Fulton, arriving there between sundown and dark, August 17, something over fifty-two hours from the time they started from Windsor. After failing to reach North Jefferson in time to catch the Fulton train on the 16th, the delay at

North Jefferson, or Mokane where the mules were cared for, was unavoidable. The mules were sent on to Fulton on the first train thereafter, and no complaint is made because the mules were cared for at Mokane. If the mules had arrived at North Jefferson two hours earlier than they did, there would have been no delay at North Jefferson, since the one o'clock train did not leave that point for Fulton until 2:30 p. m. on the 16th. So that, unless there was negligent delay before the mules reached North Jefferson, the defendant is not responsible for the delay occurring thereafter.

The defendant offered no evidence but stood upon its overruled demurrer to plaintiff's evidence. Plaintiff recovered and defendant appeals, its main contention being that there is no evidence showing a negligent delay. Undoubtedly a showing of mere delay and nothing more, neither negligent acts causing it nor other circumstances tending to raise even a slight inference of negligence, is insufficient to support a recovery. In this case no specific *acts* of negligence are alleged or shown. But the question is, has the delay been shown with such circumstances and under such surroundings as to raise the inference that the delay had its origin in negligence? From the very nature of the relation of carrier and shipper, circumstances that even slightly tend to show this are sufficient, especially, where the knowledge of what caused the delay is with the carrier and not the shipper. [Bushnell v. Railroad, 118 Mo. App. 618, 627; Gilbert v. Railroad, 132 Mo. App. 697, 764. If, therefore, such circumstances and surroundings have been shown in this case, plaintiff is entitled to recover.

Defendant received the mules for shipment from Windsor to Fulton. It therefore became bound to so transport them as to enable them to reach their destination in reasonable time. A reasonable time theretofore had been, and thereafter was, twenty-four hours

or less on shipments starting in the afternoon as this one did. Defendant knew that there was but one freight a day from North Jefferson to Fulton and that its leaving time was one o'clock. The regular east-bound freight from Sedalia to North Jefferson arrives at the latter place between three and four in the afternoon and is, therefore, too late for the Fulton train. So that whenever freight was to be sent from Sedalia to connect with this Fulton train, defendant sent out No. 116 as an extra. It was made up at Sedalia and ran on special orders. Its evident purpose was to catch the Fulton train. The delay at Sedalia from 6:10 in the evening till 10:15 in the morning of the next day, a period of sixteen hours and five minutes, was shown. The train started from Sedalia with the mules at 10:15 two and three fourths hours before the time the Fulton train was due to leave, so that it had only this length of time to go sixty miles, a run which on this occasion required nearly six hours. Now, shipments made from Windsor to Fulton both before and after this, and starting at the same time in the afternoon, had reached Fulton within twenty-four hours. So that in those shipments there was either less delay at Sedalia or less delay in going from Sedalia to North Jefferson, much less in fact, because Fulton was twenty-five miles further on than North Jefferson. And while it required only twenty-four hours or less to get to Fulton in all other shipments, yet it took twenty-six hours for this shipment to get as far as North Jefferson. So that unquestionably there was unusual delay. Was it under such circumstances as tended to exclude every hypothesis except that of defendant's negligence? It was shown that there were no accidents or trouble of any kind on the road; that the route between Windsor and North Jefferson was clear and open, no washouts or breakdowns, no difficulty of any kind; that the trains ran, *when they did run*, without a hitch of any kind;

168 Mo. App. 35

and all of this was shown by the agents and operatives of the defendant. The plaintiff knew nothing of what occurred on the way as he did not accompany the mules nor did any one for him. It would seem that a delay occurring under this state of facts would be sufficient to raise an inference that negligence was the cause thereof.

Appellant's point that there was a failure to prove actionable damages cannot be sustained. The petition does not declare on a failure to reach a certain market. but upon the loss sustained by reason of the difference in the flesh and condition of. the mules on arrival from that in which they would have been had no delay occurred. To get at this loss it is necessary to show the difference in the market value of the mules in one condition from their market value in the other. In doing this the term "market value" is used in contradistinction to the value peculiar to the owner; and not because the property damaged is to be immediately sold on the market. The above is the correct rule whether the property is shipped to market or held for some other purpose. [New York, etc., Railroad Co., v. Estill, 147 U. S. 591.] In this case, at pages 616 and 617, the Supreme Court of the United States say: "The difference between the market value of the cattle, in the condition in which they would have arrived but for the negligence of the defendant, and their market value in the condition in which, by reason of such negligence, they did arrive, constituted the proper rule of damages. It was not material whether the plaintiffs intended to keep the cattle upon their farms, for breeding purposes, or to sell them upon the market. The depreciation in value of the cattle was the same in either case."

The contention is made that this difference in value was only temporary. This makes it none the less a loss. Plaintiff did not claim the mules were permanently injured but that they were so set back in

condition and flesh as to require him to feed them at least a month and perhaps longer to bring them back to the condition they should have been in on arrival at Fulton. His loss in doing this was permanent though the deteriorated condition of the mules was temporary. Whether plaintiff was thus required to longer feed and care for the mules on account of their reduced condition caused by the delay is for the jury to say, not this court.

Judgment affirmed. All concur.