JAMES E. HICKEY, Respondent, v. THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 6, 1913.

1. CARRIERS OF LIVE STOCK: Damages: Delayed Shipment: Federal Law.    The plaintiff sued to recover damages for a delayed shipment of cattle over the defendant's railroad.    The cattle were received at Stewartsville to be shipped to Chicago. The defendants unloaded the cattle at Galesburg in order to feed and water them, as they were compelled to do under the Federal "twenty-eight hour" law, unless the shipper otherwise specified in writing, which he did not do.    Held, that the delay was caused by the action of plaintiff in electing to have the cattle unloaded at Galesburg, and not by any negligence of the defendant.

2. ———: ———: United States Statutes.    The U. S. Comp. Stat., pp. 1178-79, provides that no railroad shall confine live stock in cars for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner into

properly equipped pens for rest, water and feeding for a period of at least five consecutive hours, provided that upon the written request of the owner, which written request shall be separate and apart from a printed bill of lading or other railroad form, the time of confinement may be extended to thirty-six hours.

3. ————: ————: ————: ————: **Burden of Proof.** In order to recover the damages sustained in consequence of delay in the transportation of a shipment the burden is on the plaintiff to show not only an unusual delay but that such delay was caused by negligence of defendant. Negligence is the gravamen of the action and the rule is well settled that mere proof of delay, of itself, will not support an inference of negligence.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED.

*M. G. Roberts* and *Jno. C. Carr* for appellant.

*Frost & Frost* for respondent.

JOHNSON, J.—This is an action against a common carrier to recover damages resulting from negligent delay in the transportation of four carloads of fat cattle to market. The cattle were received by defendant at Stewartsville on July 3, 1910, for carriage to Chicago and the petition alleges that defendant failed to transport them in accordance with the requirements of the shipping contract or within a reasonable time, "but on the contrary said four carloads of cattle were negligently and carelessly delayed en route between the points aforesaid and allowed to stand on the track in the cars for a long space of time and in excess of the time required to transport said cattle by the use of ordinary care and diligence. That by the use of ordinary care and diligence said defendant should have transported said cattle to their destination by early on the morning of July 5, 1910, in

good time for the market on that day but by reason of defendant's negligence as aforesaid said cattle failed to reach said stockyards in the city of Chicago until five o'clock p. m., on said fifth day of July long after the market for said day had closed.''

The answer admits the receipt of cattle for shipment from Stewartsville to the stockyards at Chicago, denies the other allegations of the petition and alleges in substance, that the delay of which plaintiff complains was caused by the necessary compliance by defendant ''with the Federal law governing transportation of live stock by common carriers, commonly known as the 'Twenty-eight Hour Law.' '' A trial of the issues resulted in a verdict and judgment for plaintiff for $250 and the cause is here on the appeal of defendant whose principal contention is that the demurrer to plaintiff's evidence should have been given.

The cattle were shipped on train No. 74, which left Stewartsville at nine o'clock p. m. on schedule time. The time tables introduced in evidence by defendant scheduled that train (which was defendant's best and fastest train for the carriage of live stock from Stewartsville to Chicago) to leave Brookfield at 2:45 the following morning, Quincy, Ill. at 10:30, to arrive at Galesburg, Ill. at 4:00 p. m., to leave that point at 8:30 p. m. and to arrive in Chicago the next morning (July 5th) at six o'clock—a total of thirty-three hours. At Galesburg the train was divided into two or three and sometimes four sections, the last section leaving for Chicago at 8:30 p. m.

The evidence of plaintiff relating to the usual time consumed in the transportation of cattle from Stewartsville to Chicago on that train does not differ materially from that of defendant. All of the evidence shows that the time was in excess of twenty-eight hours. The train in question arrived at Brookfield on time but was four hours late in leaving that place, due, so plaintiff contends, to negligence in waiting for an-

other stock train from Kansas City. Some of this lost time was regained and the train arrived at Galesburg at 6:45 p. m.—two hours and forty-five minutes late. It required nine or ten hours for a stock train to run from Galesburg to Chicago and as twenty-two hours had been consumed in the transportation, defendant switched the cars to the stockyards at Galesburg and unloaded the cattle for food, water and rest, in obedience to the command of the Twenty-eight Hour Law. That law (U. S. Comp. Stat., pp. 1178-79, Supp. of 1909, Act of June 29, 1906, chap. 3594, sec. 3413), provides that no railroad company shall confine live stock ''in cars for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water and feeding, for a period of at least five consecutive hours . . . provided that upon the written request of the owner . . . which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours.'' Plaintiff had filed no such request with defendant and in complying with the statute defendant, counting the time required for loading and unloading, could not have forwarded the cattle before one o'clock the following morning. There was a freight train leaving Galesburg for Chicago at that hour, but it was not a stock train and its schedule time of arrival at Chicago was in the afternoon, too late for the cattle to be put on the market that day. Defendant did not send the cattle on that train, but waited for the next stock train which left Galesburg at 8:45 a. m., July 5, and arrived at Chicago at 5:10 p. m. Forty-four hours were consumed in the whole journey, the usual time of which was eleven or twelve hours less.

In order to recover the damages he sustained in consequence of delay in the transportation of the shipment, the burden is on plaintiff to show not only an

unusual delay but that such delay was caused by negligence of defendant. Negligence is the gravamen of the action and the rule is well settled that mere proof of delay, of itself, will not support an inference of negligence. [Ecton v. Railway, 125 Mo. App. 223; Milling Co. v. Transit Co., 122 Mo. l. c. 275; McCrary v. Railway, 109 Mo. App. 567; Wright v. Railroad, 118 Mo. App. 292; Werbick v. Railroad, 131 Mo. App. l. c. 52; Clark v. Railroad, 138 Mo. App. 424.]

A delay caused solely by defendant's compliance with the provisions of the Twenty-eight Hour Law could not be actionable since it should be regarded as the result of the performance of a duty imposed by law. [Ecton v. Railway, supra.] The decisive question in the case for our solution is whether the evidence of plaintiff tends to show the unusual delay of twelve hours in the transportation was caused solely by the necessity of obeying the Twenty-eight Hour Law or was due to negligence.

We may concede for argument, without so deciding, that defendant was guilty of negligence in holding the train at Brookfield four hours but such concession does not carry with it the conclusion that such negligence produced any injurious effect. The train arrived at Galesburg in ample time for the cattle to be forwarded on the same train which did not leave Galesburg until 8:30 that evening and arrived at Chicago on schedule time and, of course, in time for the market of July 5th. Had plaintiff filed a written request for the cattle to go through without stopping for rest they would have made the journey on schedule time and within thirty-six hours. They would have gone forward on the same train that would have been employed in their transportation had they arrived in Galesburg on time. The unusual delay in arriving at Chicago, therefore, could not have been caused by the stop in Brookfield, and the failure of defendant to forward the cattle from Galesburg on train No. 74

was due entirely to the imperative requirements of the Twenty-eight Hour Law which would have prevented the cattle from going forward on that train had they arrived in Galesburg on time. In either event they could not have been forwarded before ten o'clock, long after the departure of the last section of train No. 74. Plaintiff could have prevented this delay at Galesburg by filing a written request for the cattle to go through without stopping for food, water and rest, and omission to take such action was the equivalent of a direct request that such stop should be made. He cannot justly complain of defendant for pursuing the only course his own conduct left open to it.

Nor may it be said with reason that defendant detained the cattle in Galesburg longer than was necessary to perform the duty imposed by the statute. They were forwarded on the first train that carried live stock and in failing to file a written request for a through shipment, plaintiff must be held to have contemplated that the regular service would be employed and that the cattle would not reach Chicago in time for the market of July 5th. Certainly it would be unreasonable to hold that defendant was bound to forward the shipment by special train. Clearly the delay was caused by the action of plaintiff in electing to have the cattle unloaded in Galesburg for food, water and rest, and not to any negligence of defendant. The learned trial judge erred in overruling the demurrer to the evidence.

The judgment is reversed. All concur.