SAM McFALL, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 13, 1914.

1. CARRIERS OF LIVESTOCK: Delay in Shipment: Evidence: Jury Question.  A showing of mere delay, with nothing more, is insufficient to support a recovery for delay in the transmission of livestock.  But delay shown under such circumstances as to raise even a slight inference of negligence is sufficient. Where a delay occurred at several points en route, some of which are unexplained, the question of negligence is for the jury.

2. ———: ———: No Particular Market: Interstate Shipments. The contract not calling for any particular market, defendant was only required to transport in a reasonable time.  If schedules of defendant's trains did not permit the arrival of

shipper's cattle in time for the market of the day of arrival, plaintiff could not recover damages from loss on account of not reaching that market. The fact that he was not told he could not reach that market will not alter the matter. He must inquire and inform himself as to the schedules.

3. ———: ———: ———: **Market After Expiration of Reasonable Time and Regular Schedule.** The situation is different as to market after the regular schedule time and the shrinkage thus occurring. Loss arising from the lapse of time after that hour would be the direct result of the delay. And if that delay is shown to be negligent, defendant would be liable for that delay.

4. **TRIAL PRACTICE: Evidence: Exclusion.** Evidence given in a deposition by a witness, who did not know of his own knowledge as to the facts about which he testifies, should be excluded at the trial even though it was brought out by the party asking its exclusion, where it appears that part of the evidence was given in answer to a question as to whether he knew or not, and the rest of it given when it appeared as if the witness had some knowledge of the matter from his experience. When, however, it finally appeared that he did not know, it should have been excluded.

5. ———: **Federal Twenty-Eight-Hour Law: Instruction: Departure.** Where the petition states a mere common law action for negligent delay it is wholly beyond the scope of the pleadings and is improper and prejudicial to instruct the jury that a violation of the Federal Twenty-eight-Hour Law will entitle plaintiff to recover.

6. ———: **Evidence as to Shrinkage and Loss in Value.** Evidence of a witness giving his opinion as to how much the cattle shrunk and how much less they sold for on a subsequent market on account thereof is not a substitution of the witness' judgment for that of the jury.

7. **PLEADING: Justice Court: No Objection to Evidence.** An allegation in a petition for delay in shipment of stock that it did not reach its destination in time for a certain market, may lay it open to the charge that by specifying one item of damage it has excluded all others, but where the petition originated in a justice court, and no objection was made to evidence as to other items of damage, but all parties treated it as a petition covering all items, the court will give the petition the construction placed upon it by the parties.

8. ———: ———: ———: **Amendment on Appeal to Circuit Court.** The cause of action being the negligent transportation of the cattle, and loss by reason of shrinkage being a natural, reasonable and probable result thereof, an amendment of the

petition so as to include this item would have been permissible under Section 7587, R. S. Mo. 1909, even after appeal to the circuit court since it did not introduce a new cause of action nor an item not intended to be included.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED.

*Warner, Dean, McLeod & Langworthy* for appellant.

The court committed error in refusing to give to the jury the peremptory instruction requested by defendant at the close of the entire case, directing the jury to return a verdict in favor of the defendant. Etcon v. Railroad, 125 Mo. App. 223; Clark v. Railroad, 138 Mo. App. 424; Ridgeway v. Railroad, 161 Mo. App. 260; McDowell v. Railroad, 167 Mo. App. 577; Winslow v. Railroad, 170 Mo. App. 617; Hickey v. Railroad, 174 Mo. App. 408, 160 S. W. 24; Gregory v. Railroad, 174 Mo. App. 550, 160 S. W. 830.

*H. H. McCluer* and *Omar E. Robinson* for respondent.

The court did not commit error in refusing to give to the jury the peremptory instruction requested by defendant at the close of the entire case. Heine v. Railroad, 144 Mo. App. 443; Crawford v. Stock Yards Co., 216 Mo. 395.

TRIMBLE, J.—Action for damages alleged to have been caused by a negligent delay in the shipment of cattle. Plaintiff recovered and defendant has appealed.

The case originated in a justice court. The first question to be determined is what negligence is covered by the petition. Defendant claims that the only

damage pleaded is loss from failure to reach the Kansas City market of Wednesday, October 4, 1911, and that loss from shrinkage and bad appearance of the cattle on account of the length of time they were on the train was not pleaded, and hence evidence thereof was not admissible, not being within the issues.

Owing to the presence of an allegation in the petition that the cattle did not reach Kansas City in time for the Wednesday market and could not be placed on the market earlier than the next day, it might appear somewhat problematical, to say the least, whether the petition did not, according to the maxim *expressio unius est exclusio alterius,* plead only the damages arising from failure to reach a certain market. However, the pleading came from a justice court. The petition did not limit the damages to that one item, nor did it state all the facts necessary to make out a case as to that single item. It alleged generally that plaintiff by reason of the negligent and careless handling and shipment of said cattle was damaged in the sum of $300. Both sides treated the petition as covering all damages arising from a careless and negligent shipment. The evidence as to shrinkage and bad appearance of the cattle was not objected to as being outside the pleading. Consequently, we will place the same construction on the petition the parties did at the trial. [Strauss v. Metropolitan St. Ry. Co., 166 Mo. App. 153; Litton v. Chicago, Burlington & Quincy R. Co., 111 Mo. App. 140; Mellor v. Missouri Pac. R. Co., 105 Mo. 455, l. c. 471; Mitchell v. Samford, 149 Mo. App. 72, l. c. 77; Chamlee v. Planters Hotel Co., 155 Mo. App. 144 l. c. 159.] If such objection had been made, and the petition held not to cover shrinkage, plaintiff could have amended the petition pursuant to section 1848, Revised Statutes 1909. The cause of action was the negligent transportation of the cattle, and loss by reason of shrinkage was one of the natural,

reasonable and probable results arising therefrom. Amending the petition in this regard would not have introduced a new cause of action, and hence the amendment would have been permissible under section 7587, Revised Statutes 1909 even though it was on appeal from the justice court.

The shipment in question consisted of two carloads, or fifty-four head, of grass-fed cattle shipped from Sargent, Nebraska, by way of Lincoln through St. Joseph to Kansas City, Missouri. No delay is claimed until after the cattle left Lincoln, Nebraska.

Defendant, upon the theory that the only item of damage pleaded is the loss on account of failure to reach the Wednesday market, claims that no negligence was shown, but that if there was, under the scheduled service for cattle leaving Lincoln on Tuesdays, there was no way for cattle to reach the Wednesday Kansas City market, and consequently the delay was not the proximate cause of the damage.

According to the schedules offered in evidence by defendant, a special service went into effect February 28, 1911, by which on Mondays and Wednesdays, cattle leaving Lincoln at 3:20 went as through freight, not stopping for local shipments, on to Kansas City, arriving there in time for the next morning's market. But on other days in the week the train leaving Lincoln at 3:20 went only to Table Rock, the end of the division, and at this point stock for Kansas City waited and was taken on by a train which left Lincoln at 6:30 p. m. and, affected by local business, did not arrive in Kansas City until 12:05 the next day. The shipment in question left Lincoln on Tuesday, October 4, 1911, at 3:20 p. m. and under the schedule in force would not be due in Kansas City until 12:05 p. m. on Wednesday.

Plaintiff testified that he never learned of such special service on Mondays and Wednesdays until long after the shipment in question; that during the five or

six years preceding the shipment in question he had shipped as many as 500 carloads of cattle from Lincoln, two-third of which were to the Kansas City market, and that they usually left Lincoln between three and four o'clock on the afternoon of one day and got to Kansas City between five and seven o'clock in the morning of the next day in ample time for that day's market. A salesman in the stockyards testified to the same effect. On cross-examination, however, it appeared that most of the shipments were made on Mondays and Wednesdays; and he admitted on cross-examination that he was only testifying in a general way as to the arrival of defendant's stock trains in the morning; that there were two days in the week when special service was given and that the trains on those days ran better than on others. Plaintiff's evidence, as to shipments being able to start from Lincoln between three and four in the afternoon of any day and reach Kansas City in time for the early morning market the next day, was given in general terms. He was not able to specify any shipments that did so on ordinary days, that is, that started from Lincoln on days other than Mondays and Wednesdays, except one in May, 1912, but it appeared that a special arrangement was made in regard to that one. It is inconceivable that defendant's printed schedules provided for trains to be run and shipments made in one way, and that, notwithstanding this, trains were run and shipments were made in an entirely different way. In other words, it is not reasonable to suppose that although according to defendant's schedules shipments leaving Lincoln at 3:20 Tuesday afternoon could not reach Kansas City until 12:05 p. m. Wednesday, nevertheless the trains were actually so run that as a matter of fact such shipments did reach Kansas City early Wednesday morning. If testimony is thus offered to show that the actual schedule is thus different from the printed schedule, it should be specific, positive and

definite, not leaving it to conjecture or hearsay as to when the cattle started. Nor would the mere fact that a train from St. Joseph arrived in Kansas City over the defendant's road every day in time for the early market show that cattle from Lincoln, starting the afternoon before, arrived thus every day. On the other hand, the defendant's evidence ought not to be confined merely to what the printed schedules show but should state that as a matter of fact no such shipments from Lincoln on ordinary days reached Kansas City in time for the next day's early market. Definite and positive evidence ought to be easily obtainable as to this matter. However, the ordinary schedule which defendant claimed was in force would require the train to reach Kansas City at 12:05 p. m. Wednesday. The contract of shipment did not call for any particular market, and hence defendant was only required to transport in a reasonable time. The cattle did not reach Kansas City until 8:40 p. m. Wednesday and were, therefore, required to be held over till Thursday. There was evidence tending to show that if the cattle had reached Kansas City at 12:05 the regular time for the train's arrival, according to the service in force as claimed by defendant, they could have been sold on Wednesday's afternoon market, which, while not so good as the Wednesday morning market, was still better than any market in the week after Wednesday. The shipment was an interstate shipment, and is therefore controlled by the principles and rules laid down by the Federal courts. If, therefore, the schedules of defendant's trains did not permit the arrival of plaintiff's cattle in Kansas City in time for the early morning market on Wednesday, plaintiff could not recover any damages from loss on account of not reaching that early market. The fact that the shipping agent did not tell plaintiff he could not reach that early market will not alter the matter. Under the Federal decisions plaintiff must inquire and inform

himself as to those schedules. Consequently, if the service was as shown by defendant, even if there was negligent delay shown, it was not the proximate cause of the damage sustained by reason of not reaching the Wednesday morning market.

As to the damage sustained in not reaching the Wednesday afternoon market, if any, and as to the shrinkage of the cattle from the delay after 12:05 p. m., the situation is different. Loss arising from the lapse of time after that hour would be the direct result of delay causing the failure to arrive at 12:05. And if the delay was shown to be negligent, defendant would be liable for that loss without regard to whether defendant's service was as plaintiff claimed or as defendant insisted it was.

The cattle shipped were grass-fed and fat. They would therefore suffer peculiarly from delay and long confinement on the cars. It is only 200 miles from Lincoln to Kansas City. The cattle were accompanied by two men. There was evidence that the cattle were delayed something like five hours at Napier, three hours at St. Joseph, and six hours at Harlem just outside the limits of Kansas City. A part of these delays were unexplained. A number of trains were allowed to pass this train. The delay was unusual and beyond a reasonable time. Mere delay, with nothing more, is insufficient to support a recovery for delay in the transmission of live stock. But delay shown under such circumstances as to raise even a slight inference of negligence is sufficient. [Muir v. Missouri, Kansas & Texas R. Co., 168 Mo. App. 542; Bushnell v. Railroad, 118 Mo. App. 618; Anderson v. Railroad, 93 Mo. App. 677; Lay v. Railroad, 157 Mo. App. 467.] Where a delay has occurred at several points en route, some of which are unexplained, the question of negligence is for the jury. [Libby v. Railroad, 138 Mo. App. 424, l. c. 426.] The excuse for the delay at Harlem was not a sufficient excuse. There was no sudden, unexpected,

and unlooked for congestion causing that delay, nor would any delay have been caused by the business at that point had there been no delay at the other stations between Harlem and Lincoln. There was evidence also of a delay at Table Rock longer than the usual wait at that point for train No. 110. Under these circumstances we think the question of negligence was properly for the jury.

We do not think the testimony of Satterfield as to when the train was due in Kansas City should have been allowed to go to the jury. It is true, it occurred in a deposition and came out in the cross-examination by defendant, but some of the evidence was given in answer to the specific question if he knew when the train was due in Kansas City. At the time other portions were given it did not clearly appear that he knew nothing about the matter, but inferentially that he did know from his experience in shipping. Afterwards it came out clearly that he knew nothing whatever of his own knowledge about it. The objection to his testimony on that feature, made at the trial, should therefore have been sustained. Asking to have it stricken out at the time the deposition was taken would have accomplished nothing. Cross-examination in an endeavor to find out if he knew of his own knowledge the time required, was no waiver of the admissibility of the evidence he gave as to when it was due, in view of later admission that he did not know.

Instruction D. was clearly erroneous. It was based on a cause of action given by the Federal twenty-eight Hour Law, while the petition was a mere common law action for negligent delay in shipment. It was wholly beyond the scope of the pleadings, and evidence of that violation of that law and the argument made thereon were improper and prejudicial. [Raybourne v. Phillips, 160 Mo. App. 534; Schumacher v. Kansas City Breweries Co., 247 Mo. 141, l. c. 162; Burgher v. Wabash Railroad, 164 Mo. App. 114.] In ad-

dition to this, it amounted to a peremptory instruction to find for plaintiff and could not therefore be considered harmless.

The admission of evidence as to the condition the cattle were in and the price they would have brought had they been in good condition was objected to but we find no error therein. Such evidence is not a substitution of the witness' judgment for that of the jury. [McCrary v. Chicago & Alton R. Co., 109 Mo. App. 567, l. c. 571; St. Louis, Keokuk and Northwestern R. Co. v. St. Louis Union Stock Yards Co., 120 Mo. 541, l. c. 551.]

For the error above noted the judgment is reversed and the cause remanded. All concur.