SAM McFALL, JOE SNETHAM and WEID POWER, Respondents, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, June 13, 1914.**

1. **CARRIERS OF LIVE STOCK: Delay in Shipment: Evidence: Jury Question.** A showing of mere delay, with nothing more, is insufficient to support a recovery for delay in the transmission of live stock. But delay shown under such circumstances as to raise even a slight inference of negligence is sufficient. Where a delay occurred at several points en route, some of which are unexplained, the question of negligence is for the jury.

2. ————: ————: **Excuse for Delay: Crowded Conditions of Defendant's Terminals.** Without passing upon the question whether the congestion and heavy traffic at defendant's terminals—(which is not caused by a sudden and unexpected increase of business but which is a regular condition), is a sufficient excuse owing to the alleged impossibility to overcome it, is *held* that plaintiff having started a shipment at a time when according to schedule he would arrive at a certain hour, plaintiff ought not to stand a loss caused by holding his cattle on the side track while defendant sends its tenant.

trains over its tracks, at least unless plaintiff is clearly given notice of the conditions so that he may start his shipments so as to arrive at an hour when such conditions do not prevail. In the absence of proof that the change of schedule was published, a change made on the day plaintiff shipped and after the shipment started is no notice to plaintiff.

3. **PLEADING: Justice Court: No Objection to Evidence.** An allegation in a petition for delay in shipment of stock that it did not reach its destination in time for a certain market, may lay it open to the charge that by specifying one item of damage it has excluded all others, but where the petition originated in a justice court, and no objection was made to evidence as to other items of damage, but all parties treated it as a petition covering all items, the court will give the petition the construction placed upon it by the parties.

4. ———: ———: ———: **Amendment on Appeal to Circuit Court.** The cause of action being the negligent transportation of the cattle, and loss by reason of shrinkage being a natural, reasonable and probable result thereof, an amendment of the petition so as to include this item would have been permissible, under Section 7587, R. S. Mo. 1909, even after appeal to the circuit court since it did not introduce a new cause of action nor an item not intended to be included.

5. **EVIDENCE: Shrinkage and Loss in Value.** Evidence of a witness giving his opinion as to how much the cattle shrunk and how much less they sold for on a subsequent market on account thereof is not a substitution of the witness' judgment for that of the jury.

Appeal from Jackson Circuit Court.—*Hon. Rees Turpin*, Special Judge.

AFFIRMED.

*Warner, Dean, McLeod & Langworthy* for appellant.

*Omar E. Robinson* and *H. H. McCluer* for respondents.

TRIMBLE, J.—In this case plaintiffs sue for damages for negligent delay in the shipment of forty-eight head of grassfed cattle from Wood Lake, Ne-

braska, by way of South Omaha and St. Joseph to Kansas City, Missouri. Plaintiffs obtained judgment and the defendant has appealed.

It is contended that no negligent delay was shown and further more that even if there was, it was not the proximate cause of the damage. This last contention involves the construction to be placed upon the petition. The case originated in a justice court and the pleading is entitled to the liberal construction to be given such pleadings. Defendant says the petion counts only on damage by reason of failure to reach the Kansas City market of November 7, 1911, while plaintiffs claim the petition counted on general damages for delay including shrinkage of the cattle by reason of long confinement on the cars. The petition alleges that they did not reach the market for November 7, 1911, and on account of that allegation it might be open to the charge that by specifying one item of damage it excluded all others. The pleading, however, did not limit the damages to a failure to reach a particular market nor did it state facts showing damages by reason thereof. It alleged generally that plaintiffs by reason of the negligent and careless handling and shipment of said cattle were damaged in the sum of $294. A large amount of evidence was offered to show a loss by reason of shrinkage due to the additional confinement. No objection was made to this evidence on the ground that it was outside of the pleadings. In fact, it was stated that no objection was made to the evidence itself but only to the evidence being developed by leading questions. Both sides treated the petition as covering damages from loss by reason of shrinkage and bad appearance of the cattle. We will, therefore, construe the petition as did the parties at the trial. [Straus v. Metropolitan St. Ry. Co., 166 Mo. App. 153; Litton v. Railroad, 111 Mo. App. 140; Meller v. Railroad, 105 Mo. 455, l. c. 471; Mitchell v. Samford, 149 Mo. App. 72.] If an objection had been

made that the petition did not include this item of damage and the court had held that it did not, plaintiffs would have had the right to amend. [Sec. 1848, R. S. Mo. 1909.] The cause of action was the negligent delay in the transportation of the cattle, and loss by reason of shrinkage was a natural, reasonable and probable result thereof. Amending the petition would not have introduced a new cause of action, and hence the amendment would have been permissible under section 7587, Revised Statutes 1909, even though it was on appeal from a justice court.

The shipment in question consisted of forty-eight head of grassfed cattle from Wood Lake to Kansas City. And while no delay was shown until after the train reached St. Joseph, Missouri, yet it is plaintiffs' contention that grassfed cattle after having been on the road as long as they necessarily were from Wood Lake, Nebraska, suffer a great deal more from delay after being thus a long time on the road than they would for the same amount of delay occurring soon after the commencement of their journey.

The contract of shipment did not call for any particular market, and hence defendant was only required to transport in a reasonable time.

The shipment reached St. Joseph at 6 a. m. Tuesday, November 7, 1911. Plaintiff McFall accompanied the shipment from St. Joseph to Kansas City. From St. Joseph to Kansas City is sixty-three miles. The usual time occupied in making this run was four hours. In doing so this time there was a delay of more than an hour in getting to the Murray Yards at Harlem three and one-half miles from the Kansas City Stock Yards. From this point to the stockyards there was an additional delay of four hours and twenty-five minutes, putting the cattle into the stockyards too late to go on any market that day, thus necessitating the cattle being held over in the pens till next day and becom-

ing what is known in the yards as "stale" cattle which injures their sale.

Plaintiff McFall had for years been shipping cattle over this route, and up to the very day of this shipment the train carrying his cattle usually arrived, and was due to arrive, in Kansas City at 12:05 p. m., but on the day this shipment started from Wood Lake, Nebraska, owing to the heavy traffic "of defendant and other railroads using defendant's entrance into Kansas City over the Hannibal bridge and through what is known as the Gooseneck," a narrow strip of ground owned by defendant over which entrance is gained into Kansas City, the schedule of this train was changed from 12:05 in Kansas City to 11:30 Murray Yards, and from this point into the stockyards, a distance of three and one-half miles, there was no schedule, freight being taken from there on by switch engines. No schedules were introduced showing this change. Defendant's chief dispatcher testified that such change was made on that day, and that if a shipper asked for the time of the train's arrival he would be given the time for arrival at Murray Yards.

It was not shown that a change in the regular printed schedule was published and put into force on that day, and, if it was, there was no showing that plaintiff had any notice thereof. On the contrary the evidence tended to show that if one did go into effect it was after the cattle started from Wood Lake, and plaintiffs, instead of being notified of any change in the schedule or inability to get past Murray yards on any schedule at all, were given assurances to the contrary while the cattle were in transit.

A large part of the congestion and heavy traffic between Murray Yards and the Stock Yards is caused by other roads using defendant's tracks. It was no sudden and unexpected increase of business, but a permanent condition. And, without going into the question of the possibility or impossibility of defendant's

remedying the conditions there, certainly plaintiffs ought not to stand a loss caused by holding their cattle on the side track while defendant sends its "tenant" trains over its tracks, unless plaintiffs are clearly given notice of such conditions so as to start his shipments at such time as to avoid the results flowing from an arrival at that hour in the day. The question of whether defendant is to be exempt from liability for loss because of crowded conditions at the "gooseneck," regardless of the circumstances of the shipment, is not passed upon. But certainly when plaintiff McFall, without notice that his shipment would not reach the stockyards at 12:05, but would get there late in the afternoon and held over until next day and be sold as stale cattle, started to ship his cattle, he was at least entitled to be informed of the conditions he was running into. It is held in Baker v. Railroad, 145 Mo. App. 189, l. c. 197, that while a common carrier is not liable for a congestion caused by a sudden and unforeseen increase of business, yet it cannot excuse its failure to meet natural and normal traffic conditions by saying it had not provided against them. To the same effect are Thompson v. Railroad, 136 Mo. App. 404; Thero v. Mo. Pacific Ry. Co., 144 Mo. App. 161.

In addition to this, there was evidence tending to show delays at various places along the road between St. Joseph and Murray Yards, and the train arrived at the latter place one hour and fifteen minutes late going sixty-three miles. Plaintiff McFall accompanied the shipment and says the train stopped at nearly every station and waited at one station over an hour. The train dispatcher testifying from the train sheets says no such stop occurred. This amounts to no more than the train sheets do not show it. If arriving at Murray Yards out of its regular time would throw the train out of getting into the stockyards, the importance of having no delay in reaching Murray Yards is greatly enhanced. Under all the circumstances, the question of

whether there was negligent delay shown was for the jury. The circumstances were such from which an inference of negligence could be drawn, and that the so-called explanation of the delay did not conclusively explain. Where the circumstances are such as to raise even a slight inference of negligence, this is sufficient to go to the jury. [Anderson v. Railway, 93 Mo. App. 677; Lay v. Railroad, 157 Mo. App. 467; Bushnell v. Railroad, 118 Mo. App. 618; Muir v. Railroad, 168 Mo. App. 542.]

It is contended that no damages arose from failure to go upon the afternoon market, since there was no such market. The evidence shows that the packers do not buy after a certain hour, but the evidence also shows that others continue to buy after that hour, and that although the afternoon market is not so good, yet it is better to sell even on that market than to hold over till morning and sell as stale cattle. All of this was before the jury and was for them to settle.

There was no error in admitting the testimony of Bridgeford as to how much less in his opinion the cattle sold for on account of the bad condition. [McCrary v. Railroad, 109 Mo. App. 567, l. c. 571; St. Louis, Keokuk & Northwestern Ry. Co. v. St. Louis Union Stockyards Co., 120 Mo. 541, l. c. 550.] Neither was there error in showing the difference between the normal shrinkage and the actual shrinkage. It was for the jury to say what part of the shrinkage was due to the extra confinement on account of the delay.

Other errors in the admission of evidence and in the arguments of counsel to the jury are complained of, but they are of no moment.

The judgment is affirmed. All concur.