# L. T. HUNT et al., Respondents, v. ST. LOUIS IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, February 2, 1915.**

1. **COMMON CARRIERS: Limitations on Liability: Interstate Commerce.** The provisions of a contract for an interstate shipment of live stock, that the stock are not to be transported within any specific time nor delivered at any particular hour nor for any particular market and that they are to be fed and cared for at the shipper's expense, do not constitute a defense in an action for negligent failure to transport a shipment within a reasonable time, since such provisions do not, under the Interstate Commerce Law, operate to exempt a carrier from liability for its own negligence or that of its servants, although otherwise they are valid limitations on the carrier's liability.

2. **————: Interstate Commerce: Supremacy of Federal Law.** The validity and effect of stipulations in a contract for an interstate shipment are not to be determined by the law or policy of any State, but with reference to the Interstate Commerce Act and the decisions of the Federal courts construing it.

3. **————: Limitations on Liability: Negligence: Interstate Commerce.** The Interstate Commerce Act has not abrogated the common-law rule, heretofore obtaining in this State and generally, which forbids a common carrier from exempting itself from liability for its own negligence or that of its servants.

4. **————: Delay in Transportation: Proof of Negligence.** In order to cast liability upon a carrier for damage to a shipper from a delay in transporting a shipment, it must be shown, either directly or inferentially, that the delay resulted from the negligence of the carrier or its agents and servants; and while a mere showing of delay is not sufficient to support a recovery, it is enough for plaintiff to disclose circumstances sufficient to raise a fair inference of negligence, and proof of unreasonable delays at points *en route*, wholly unexplained, is sufficient to raise such inference.

5. **————: Delay in Transporting Live Stock: Proof of Negligence: Sufficiency of Evidence.** In an action for damages sustained by reason of a carrier's negligent failure to transport

live stock within a reasonable time, evidence that there was a delay of eight hours at the point of shipment, one hour at a point *en route* and five hours at another point, and that the shipment reached destination twenty-seven or eight hours after it was loaded on the cars, when a reasonable time for the transportation was twelve to fifteen hours, *held* sufficient to raise a fair inference of negligence on the part of defendant, so as to make the question of defendant's liability one for the jury.

6. ———: ———: **Opinion Evidence.** In an action for damages sustained by reason of a carrier's negligent failure to transport live stock within a reasonable time, evidence of experienced stockmen as to what extra shrinkage such delay would produce in stock similar to those composing the shipment was admissible.

7. ———: ———: **Damages: Sufficiency of Evidence.** In an action for damages sustained by reason of a carrier's negligent failure to transport live stock within a reasonable time, evidence *held* to support a finding of a loss to plaintiff by reason of a shrinkage in the weight of the stock, but insufficient to support a recovery on account of a decline in the market price.

8. **APPELLATE PRACTICE:** Excessive Damages: Disposition of Case. Where the damages awarded are excessive and the appellate court is unable to determine the amount of the excess, the judgment will be reversed and the cause remanded.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED AND REMANDED.

*Anthony & Davis* for appellant.

(1) The cause of action stated in plaintiffs' petition is in tort for negligent delay. In order to recover damages, if any, sustained in consequence of delay in transportation of plaintiffs' stock the burden was on the plaintiff to show not only unusual delay, but that such delay was caused by negligence of defendant. Hickey v. Railroad, 174 Mo. App. 408; Gregory v. Railroad, 174 Mo. App. 550; Ecton v. Railroad, 125 Mo. App. 223; Standard Milling Co. v. Transit Co., 122

Mo. 275; McCrary v. Railroad, 109 Mo. App. 567; Wright v. Railroad, 118 Mo. App. 392; Wernick v. Railroad, 131 Mo. App. 52; Clark v. Railroad, 138 Mo. App. 424; Dawson v. Railroad, 79 Mo. 301; Otrich v. Railroad 154 Mo. App. 435; Hurst v. Railroad, 117 Mo. App. 37; McElvain v. Railroad, 176 Mo. App. 379.   (2) The plaintiffs and defendant having agreed by the express terms of the contract of shipment that the cattle were not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market, and which said shipment was at a reduced rate as therein provided, and the plaintiff having failed to prove that the delay in the shipment was due to any negligence on the part of the defendant, the foregoing stipulations are binding and plaintiff cannot recover against the defendant.   McElvain v. Railroad, 151 Mo. App. 126; George v. Railroad, 124 Mo. 551; Sims v. Railroad, 177 Mo. App. 18; Hamilton v. Railroad, 177 Mo. App. 145. (3)   This being an interstate shipment, it is controlled by the enactments of Congress and the constructions placed thereon by the Federal courts; therefore, the contract of shipment between plaintiffs and defendant must be construed with reference to such laws and decisions.    Hamilton v. Railroad, 177 Mo. App. 145; McElvain v. Railroad, 176 Mo. App. 379.

*Benjamin H. Marbury* for respondents.

(1)   The court did not err in refusing appellant's instruction in the nature of a demurrer to the evidence; for whether the facts are disputed or undisputed, if different minds might honestly draw different conclusions from these facts, the case should properly be left to the court, sitting as a jury.   Busching v. Company, 73 Mo. 230; Baird v. Company, 146 Mo. 281; O'Mellia v. Railroad, 115 Mo. 221; Knapp v. Hanley, 108 Mo.

App. 360; Rice, Stix & Co. v. Sally, 176 Mo. 107; Forbs v. Dunnavant, 198 Mo. 193. (2) While it may be granted that evidence of mere delay standing alone is not sufficient to support a reasonable inference of negligence, yet from the very nature of the relation of carrier and shipper circumstances that even slightly tend to show a negligent origin of the unusual delay will support an inference of negligence. Bushnell v. Railroad, 118 Mo. App. 627; Anderson v. Railroad, 93 Mo. App. 679; Whitting v. Railroad, 101 Mo. 631; Otis Company v. Railroad, 112 Mo. 622; Sloop v. Railroad, 93 Mo. App. 605; Botts v. Railroad, 106 Mo. App. 397; Fulbright v. Railroad, 118 Mo. App. 486. (3) When it was shown that the delay was caused by a wreck of a train on appellant's railroad, a prima-facie case of negligence was made out, which shifted the burden of proof upon appellant to show that the wreck was the result of unavoidable accident. Thompson v. Railroad, 136 Mo. App. 404; McFall v. Railroad, 117 Mo. App. 477; Vincill v. Railroad, 132 Mo. App. 722. (4) A common carrier cannot contract against its own negligence, and whether a certain delay or delays were justified is a question for the jury, or court sitting as a jury, under the circumstances of the case. Fulbright v. Railroad, 118 Mo. App. 486; Botts v. Railroad, 106 Mo. App. 397; McFadden v. Railroad, 92 Mo. 343; Minter v. Railroad, 82 Mo. App. 130; Anderson v. Railroad, 93 Mo. App. 677; Ball v. Railroad, 83 Mo. 574; Ward v. Railroad, 158 Mo. 226; Sims v. Railroad, 177 Mo. App. 26. (5) The notice provided for in the contract of affreightment was given, as was admitted by respondents; it must therefore follow, that by the terms of the affreightment contract, appellant thereby became liable for damages for any loss or injuries to respondents, for any cause, including delays; nor does the Carmack Amendment to the Hepburn Act permit appellant to exempt itself from liability by contract (after due notice is given) for its own negligence. Sims v. Rail-

road, 177 Mo. App. 18; Joseph v. Railroad, 175 Mo. App. 18; Adams Express Company v. Croninger, 226 U. S. 491. (6) The affreightment contract was without consideration and void, for the reason that there was no evidence to show that the rate paid by respondents for transportation of the load of cattle was a reduced or special rate. Duvenick v. Railroad, 57 Mo. App. 555; Sloop v. Railroad, 117 Mo. App. 210; Kellerman v. Railroad, 136 Mo. 177; McFadden v. Railroad, 92 Mo. 343.

ALLEN, J.—This is an action for damages alleged to have been sustained by plaintiffs by reason of. negligent delay in the transportation of cattle delivered to defendant for shipment. Plaintiffs recovered and the case is here upon defendant's appeal.

The petition alleges that plaintiffs delivered thirty-one head of cattle to the defendant at DeLassus, Missouri, at nine o'clock in the afternoon of November 7, 1911, for shipment to East St. Louis, Illinois; that twelve hours was the usual time required for making such shipment, but defendant negligently failed to transport the cattle within a reasonable time, by reason whereof they did not reach their destination in time to be sold on the market the following day, November 8, making it necessary that plaintiffs hold them and sell them on November 9. And it is averred that the market on November 9, was fifteen cents per hundred pounds lower than on November 8, whereby plaintiffs lost the sum of $37.21; that because of the alleged unreasonable delay plaintiffs suffered a further loss of $25.73 by reason of shrinkage in the weight of the cattle, and were compelled to expend the sum of $8.50 in feeding them. And judgment is prayed for the total of the above mentioned sums, to-wit, $71.44.

The answer, aside from other matters which need not be noticed, avers that plaintiffs signed a written contract of affreightment whereby it was agreed that

the cattle were not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market; and that in and by said contract plaintiffs agreed to assume "all risk and expense" of feeding and caring for the cattle, "while in cars, yards, pens or elsewhere."

Plaintiffs' evidence is to the effect that the cattle, which were to be sold at the National Stock Yards, Illinois, were loaded at DeLassus at about nine o'clock in the forenoon of November 7, 1911, plaintiffs having been notified early that morning by defendant's station-agent at that point to put them in the car; but that the car did not leave DeLassus until about five o'clock that afternoon. It appears that the car was "picked up" by a "local" freight train at DeLassus, which took it to Bismark, a point about twelve miles distant on the main line of defendant's railway, where connection was made with a "through freight," which took it to its destination. Plaintiffs' evidence is that there was a delay of about one hour at Bismark; and that the car reached Desoto, some distance north, about nine o'clock that evening, where it was delayed until about two o'clock the next morning; and that it did not arrive at its destination until sometime between twelve and one o'clock on the following day, to-wit, November 8, 1911; and that a reasonable time for such shipment would be about twelve hours, or perhaps from twelve to fifteen hours. There was evidence touching the loss alleged to have been sustained by plaintiffs, which will be more particularly referred to in the course of the opinion.

No evidence was adduced by defendant to contradict that of plaintiffs relative to the time consumed in the shipment, or the delays aforesaid, or tending to explain the latter. Defendant introduced the shipping contract and the issues of a publication known as the Daily National Live Stock Reporter, issued at the National Stock Yards, Illinois, and the testimony of a

witness relative to the state of the cattle market at the latter place on November 8, and November 9, 1911, respectively.

The cause was tried by the court, without a jury, and resulted in a judgment for plaintiffs for the full amount prayed for, to-wit, $71.44.

I. The provisions of the shipping contract in evidence, to the effect that the cattle were not to be transported within any specific time nor delivered at destination at any particular hour nor in season for any particular market, and that they were to be fed and cared for at plaintiffs' expense while in defendant's hands, are valid limitations upon defendant's liability, except for its own negligence or that of its servants. It is true, as appellant asserts, that, since this is an interstate shipment, the validity and effect of these stipulations must be determined with reference to the Federal law, i. e., the Interstate Commerce Act, as finally amended, and the decisions of the Federal courts construing the same. Of this there can be no doubt. [See Sims v. Railroad, 77 Mo. App. 1. c. 25 *et seq.*, 163 S. W. 275, and authorities there collated.] But while it is true that the validity of such a contract provision is no longer to be determined by the law or policy of any State, it is entirely clear that the Federal law has in no manner abrogated the common-law rule, heretofore obtaining in this State and generally, which forbids a common carrier from exempting itself from liability for its own negligence or that of its servants. [See Adams Express Co. v. Croninger, 226 U. S. 491; Sims v. Railroad, supra.] If, therefore, there was an unreasonable delay in this shipment, caused by the negligence of the defendant or its servants, proximately resulting in loss and damage to the plaintiffs, the aforesaid stipulations in the contract of affreightment furnish no ground to defendant for avoidance of liability therefor. While, under the contract, defendant

was not required to transport the cattle to their destination in any specified time, it was under a duty to transport them within a reasonable time, for a negligent breach of which duty it may be held liable for resulting loss and damage.

II. In order to cast liability upon defendant for any loss suffered by plaintiffs by reason of a delay in making the shipment, it must be shown, either directly or inferentially, that the delay was one resulting from the negligence of defendant or its agents and servants. A mere showing of delay is insufficient, for it affords no inference that it was caused by the negligence of the carrier. [See Hickey v. Railroad, 174 Mo. App. 408, 160 S. W. 24; Gregory v. Railroad, 174 Mo. App. 550, 160 S. W. 830; McFall v. Railroad, 181 Mo. App. 142, 168 S. W. 344.] Negligence is the gravamen of the action, and the burden of proving it is upon the plaintiffs. [See Hickey v. Railroad, supra; Gregory v. Railroad, supra.]

Though a reasonable time for making such shipment is said to be about twelve hours, or perhaps not to exceed fifteen hours (the distance being about ninety miles), in the instant case from nineteen to twenty hours were consumed therein after the car left De-Lassus; and in all from twenty-seven to twenty-eight hours were consumed from the time the cattle were loaded until they were delivered at their destination. There was testimony that when these and other cattle were loaded at DeLassus, defendant's agent there said "to hurry up and load them, that the train would be there right a way." But it appears that the car containing the cattle was not moved until about eight hours later. This delay and those occurring later are wholly unexplained; though the delay of an hour at Bismark, where connection was made with the through train, doubtless cannot be regarded as unreasonable. One witness for plaintiff testified that he heard that

there had been a wreck somewhere south of Bismark, but he knew nothing thereof of his own knowledge.

While mere delay, without more, is insufficient to support a recovery, it is "enough for the plaintiff to disclose circumstances sufficient to raise a fair inference of negligence," since the means of showing the cause of the delay is with the carrier and not the shipper. [See Gregory v. Railroad, 174 Mo. App. 550, and authorities cited, 160 S. W. 830.] It is said that slight evidence of negligence is sufficient to support a finding that delay in transportation is unreasonable. [See McFall v. Railroad, 181 Mo. App. 149, 168 S. W. 344; Muir v. Railroad, 168 Mo. App. 542, 154 S. W. 877; Lay v. Railroad, 157 Mo. App. 467, 138 S. W. 884; Wright v. Railroad, 118 Mo. App. 392, 94 S. W. 555; Fulbright v. Railroad, 118 Mo. App. 482, 94 S. W. 992; Bushnell v. Railroad, 118 Mo. App. 618, 94 S. W. 1001.] This court has held that unreasonable delays at points *en route*, wholly unexplained, are sufficient to raise an inference of negligence to take the case to the jury. [See Libby v. Railroad, 137 Mo. App. l. c. 282, 117 S. W. 659; and see also McFall v. Railroad, supra, l. c. 149.]

We think that the evidence is here such as to warrant a finding that the delay was unreasonable, and to raise a fair inference, prima facie, that it was caused by defendant's negligence, under the rulings above mentioned. Under the circumstances it seems clear that the delays to which the car containing plaintiffs' cattle was subjected afford an inference of some neglect on defendant's part in the premises, sufficient, in the absence of any explanation thereof, to make out a prima-facie case for plaintiffs. And if such delays occurred through inevitable accident, or otherwise without defendant's fault, it would seem that the latter might readily have shown this, since the facts pertaining thereto were peculiarly within the knowledge of defendant's agents and servants. We are

therefore of the opinion that the court did not err in overruling defendant's demurrer to the evidence.

III. Proof of the extent of plaintiffs' loss, however, is by no means clear, and appears to be insufficient to authorize the amount of the recovery. The evidence relative to the loss due to shrinkage in weight of the cattle, caused by the delay, consists of the testimony of experienced stockmen as to what extra shrinkage such delay would produce in cattle of this character. It appears that these cattle were not weighed before shipment, and hence there is nothing to show the precise total loss in weight. However, it is held that evidence of the character above mentioned is admissible. [See McCary v. Railroad, 109 Mo. App. 567, 83 S. W. 82; McFall v. Railroad, supra, l. c. 151.] And it appears to be sufficient to support the finding of a loss to plaintiffs on this account in the amount claimed therefor in the petition. It is urged that plaintiffs' evidence shows no loss in weight whatsoever, for one of the plaintiffs testified that the cattle averaged about eight hundred pounds each in weight when they were shipped, which would make a total at 24,800 pounds for the thirty-one cattle; whereas they weighed in all 24,810 pounds when sold. From the further testimony of this plaintiff, however, it appears that he was merely giving a rough estimate of the average weight of the cattle when shipped; and, as he stated, they may have weighed considerably more. This estimate alone would therefore not be ground for denying any recovery for loss in weight due to shrinkage.

There is also testimony to the effect that plaintiffs expended $8.50 for feed, due to holding the cattle over until the next day after they arrived at their destination.

We think it clear, however, that the evidence is insufficient to support the recovery allowed on account of the alleged decline in the market. The petition avers

that the market declined fifteen cents per hundred weight; and one of the plaintiffs testified that this was his recollection of it. But it was shown that the actual quotation for all classes of cattle were the same on the two days in question. This appeared from the "Live Stock Reporter" in evidence; and defendant's witness, whose business was at the National Stock Yards, testified that, in general, the market was stronger on November 9 than on November 8, 1911. The only thing appearing to justify any recovery on account of decline in the market is a statement in what is termed the "write up" in the Live Stock Reporter of November 9, 1911, that "feeding steers" were, on that day, "generally ten cents lower than the same grade," the day previous.

One of the plaintiffs, in testifying, after examining the two issues of the publication above mentioned, admitted that the only difference in the market on the two days appeared to be a difference of ten cents per hundred pounds in "feeding steers." It does appear that a certain lot of heifers sold on November 9 at a lower price than a certain other lot on November 8; but it does not appear that the two lots were of the same grade; the maximum and minimum quotations on this class of cattle being the same for the two days.

At best, therefore, plaintiffs could recover only for a slight decline in the market on "feeding steers." Plaintiffs' cattle were a mixed lot of steers, cows and heifers. Plaintiffs certainly were not entitled to a recovery upon the basis of an average decline in the market of fifteen cents per hundred pounds, which is what the trial court allowed; though from the evidence adduced it is not clear what, if anything, plaintiffs ought to recover on this score.

The judgment will therefore be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.